Brent RANDALL, Appellant,

v.

STATE of Alaska, Appellee.

No. 3260.

Supreme Court of Alaska.

Aug. 11, 1978.

---

Barbara J. Miracle, Asst. Public Defender, and Brian Shortell, Public Defender, Anchorage, for appellant.

Glen C. Anderson, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

CONNOR, Justice.

After a jury trial in the district court, appellant Brent Carey Randall was convicted of petty larceny[1] and assault and battery.[2] The superior court affirmed. Randall appeals these convictions, alleging that the state failed to prove a prima facie case of petty larceny and that prosecutorial misconduct denied him a fair trial.

Bobby Gene Stump, a substitute security guard at the Anchorage Ramada Inn, testified that on the night of March 28, 1976, he observed a car pull into the hotel parking lot. It appeared to him that when the occupants of the car saw a police vehicle

1. AS 11.20.140.

2. AS 11.15.230.

parked in the parking lot, they turned off their headlights. When the police vehicle pulled away, the occupants of the other car turned their lights back on and proceeded around the front of the building. Shortly thereafter, Stump saw one of the occupants looking into Stump's vehicle which was also parked in the lot. Stump then went around the building and saw a woman standing by a door at the front of the building. When she saw Stump, she walked toward the parking lot, and Stump heard her knock on the side of the camper shell of a pickup truck as she walked past it. Hearing other noises coming from the truck as well, Stump looked inside the camper shell. Appellant Randall, according to Stump, was coming out of the camper holding a box labeled vacuum pump. Randall said he was taking the box to his room for safekeeping and entered the hotel by a rear door. Stump followed at a distance and, upon coming around a corner, Stump saw the pump box on the floor by an elevator. He told the desk clerk to call the police and ran after Randall, whom he saw running to the vehicle Stump originally had seen pulling into the parking lot with its lights off.

Stump then asked Randall, who was seated in the driver's side of the vehicle, to leave the car for questioning. When Randall started to drive away, Stump pulled out his gun. As Randall got out of the car, his brother ran up and began shouting at Stump. Stump testified that the brothers then beat him until some of the hotel staff came to his aid.

Randall testified that he went to the Ramada Inn that night to see if he could sell some jewelry at the bar. He testified that he was not inside the camper, nor did he see Stump until Stump approached Randall's vehicle with his gun drawn. His version of the ensuing scuffle was that Stump pulled him from the car, struck him twice in the left groin area, causing severe leg injuries, and then had him arrested.

At trial, the state offered the testimony of Michael Stan Osborne, the owner of the pickup truck with the camper shell. Osborne testified that when he left town for a temporary job, he left the truck with Fred Lanouette, manager of the Ramada Inn. Osborne had stored several items in the camper shell area of the truck, including the pump in its original box. He did not give Lanouette permission to give the box away, nor did he give Randall permission to remove the box. He testified further that, although he did not know whether Lanouette had given Randall permission to remove the box, he thought it was highly unlikely. Lanouette did not testify at the trial because he had moved from the state.

At the close of the state's evidence, the trial court denied Randall's motion for a judgment of acquittal, rejecting Randall's argument that the state had failed to prove its case on the petty larceny count. Randall contends on appeal that the trial court erred in denying his motion. He argues that since Lanouette had possessory rights in the truck, his testimony was necessary to prove that Lanouette did not consent to Randall's taking of the pump.

■ Appellant is correct that proof of the owner's or possessor's consent to the taking would render the taking non-trespassory, and there could be no larceny conviction. *Pulakis v. State,* 476 P.2d 474 (Alaska 1970).[3] Nevertheless, we do not believe it follows, as appellant urges, that proof of non-consent must be by direct evidence only.

The general rule is that any criminal offense or element of an offense may be established by circumstantial evidence unless there is an express requirement to the contrary. 1 C. Torcia, *Wharton's Criminal Evidence* § 6, at 4–5 (13th ed. 1972).[4] We recognize that there is some authority that lack of consent in a larceny context must be shown by direct evidence which includes testimony of the owner or possessor of the

---

3. *See generally,* R. Perkins, Criminal Law, at 245–46 (1969).

4. *See also,* I Wigmore on Evidence §§ 25–26, at 398–406 (1940).

item taken.[5] There is also authority for the proposition that circumstantial evidence may be used to prove lack of consent only where the state has satisfactorily explained the absence of the pertinent witness.[6] However, the majority of jurisdictions have held that the element of non-consent need not be proven by direct evidence or in express terms, but may be inferred from circumstantial evidence in the same manner and to the same extent that such evidence may be used to prove the other elements of the commission of the offense.[7]

We agree with the majority rule and hold that non-consent of the owner or possessor of the item taken may be established by circumstantial evidence. *See, Notar and Miller v. State,* 580 P.2d 699 (Alaska, 1978); *Stewart v. State,* 438 P.2d 387, 391 (Alaska 1968). We note that the contrary rule that the state's prima facie case must include the owner's testimony was based on certain English cases regarding the burden of proof of a negative such as non-consent. The rule has since been wholly repudiated in England. VII *Wigmore on Evidence* § 2081, at 417–422 and § 2089, at 451–52 (3rd ed. 1940). We believe that there is no reason for such a rule because the defendant is amply protected against unreasonable inferences by the reasonable doubt standard necessary to sustain a conviction. There is also no reason to limit the use of circumstantial evidence to those situations where the state has justified the absence from trial of the owner or possessor. His absence merely goes to the weight of the circumstantial evidence. *State v. Butler,* 82 Ariz. 25, 307 P.2d 916, 919 (1957).

■ With this principle in mind, and in light of the requirement that the trial judge in deciding a motion for judgment of acquittal must view the evidence and the inferences drawn therefrom most favorably to the state,[8] we hold that the trial court did not err in denying Randall's motion. There was ample circumstantial evidence to support a finding by the jury that Randall took the pump without Lanouette's consent. The evidence presented to the jury—the stealthful manner of the taking, Randall's leaving the box at the elevator upon his discovery by Stump, Randall's flight, and the terms upon which Osborne loaned his truck to Lanouette—is indicative of the lack of Lanouette's consent. It was not essential that Lanouette personally testify. We conclude that this evidence, together with its reasonable implications, support the trial court's finding that the state had made a prima facie case of petty larceny against Randall.

As a second ground on appeal, Randall contends that he was deprived of a fair trial because the prosecutor cross-examined him on an irrelevant and inflammatory collateral matter and, therefore, his assault and battery conviction should be reversed. We disagree.

Randall testified that Stump initiated the violence, injuring Randall so severely that

5. *E. g., Eady v. State,* 48 Ala.App. 726, 267 So.2d 516, 518 (1972); *Sizemore v. State,* 496 S.W.2d 80, 81 (Tex.Cr.App.1973); *Winn v. State,* 138 Tex.Cr.R. 202, 135 S.W.2d 118, 119 (1940).

6. *E. g., State v. Aten,* 203 Kan. 920, 457 P.2d 89, 96 (1969); *Dorsey v. State,* 172 Tex.Cr.R. 311, 356 S.W.2d 943, 945 (1962). *See* P. Herrick, Underhill's Criminal Evidence § 594, at 1450–51 (5th ed. 1957).

7. *E. g., State v. Butler,* 82 Ariz. 25, 307 P.2d 916, 919 (1957); *People v. Tijerna,* 1 Cal.3d 41, 81 Cal.Rptr. 264, 459 P.2d 680, 682 (1969); *Raullerson v. People,* 159 Colo. 395, 412 P.2d 236, 238–9 (1966); *People v. Tate,* 45 Ill.2d 540, 259 N.E.2d 791, 794 (1970), *cert. denied,* 401 U.S. 941, 91 S.Ct. 944, 28 L.Ed.2d 222 (1971); *State v. Aossey,* 201 N.W.2d 731, 733 (Iowa 1972), *cert. denied,* 412 U.S. 906, 93 S.Ct. 2292, 36 L.Ed.2d 971 (1973); *State v. Carlson,* 304 A.2d 681, 683 (Me.1973); *State v. Webb,* 423 S.W.2d 795, 798 (Mo.1968); *State v. Simons,* 187 Neb. 761, 193 N.W.2d 756, 757 (1972); *Riley v. United States,* 291 A.2d 190, 193 (D.C. App.1972); *Morton v. State,* 205 So.2d 662, 666 (Fla.App.1968); *Reece v. State,* 125 Ga.App. 49, 186 S.E.2d 502, 504 (1971); *Davidson v. State,* 330 P.2d 607, 620–21 (Okl.Cr.1958). *See* VII Wigmore on Evidence § 2081, at 422 and § 2089, at 451–52 (3rd ed. 1940); P. Herrick, Underhill's Criminal Evidence § 594, at 1450–51 n.89 and § 605, at 1478 n.58 (5th ed. 1957).

8. *Kinsman v. State,* 512 P.2d 901, 903 (Alaska 1973); *Bush v. State,* 397 P.2d 616, 618 (Alaska 1964).

he still suffered pain and required continuing medical attention. Stump denied striking Randall. To discover whether Randall's disability stemmed from his encounter with Stump, the prosecutor asked Randall if additional hospital care were administered following his arrest and initial hospitalization. When Randall replied affirmatively, the prosecutor inquired whether that hospitalization resulted from another fight.

Randall objected and, outside the presence of the jury, the court cautioned the district attorney that his "intention to go into an area involving other misconduct or other possible fights or similar incidents of the defendant . . . verges on being unprofessional." The court ordered that the prosecutor make no further reference to any other fight but allowed the prosecutor to question Randall concerning any additional injuries to his leg. Defense counsel moved that the jury be instructed to disregard the offending question. However, before the jury was recalled, he changed his mind and asked the court not to mention the "fight" for fear such instruction would merely re-emphasize the notion that Randall had engaged in subsequent misconduct.

Cross-examination continued in the presence of the jury:

"Q. Were you in the hospital sometime in May of 1976?

A. I was.

.        .        .        .        .

Q. Okay. Do you recall why you were in the hospital?

A. Because someone was beating on my head with a tire iron and try [sic] to run over it with a car.

Q. Did you receive any injuries to your leg?

A. No, sir."

Randall contends that the resumed cross-examination violated the court's order and, by depicting Randall as a "hothead", habitually involved in fights, prejudiced the jury against Randall's self defense claim to the charge of assault and battery.

■ We note at the outset that defense counsel made no new objection after the above exchange took place.[9] Neither did he move for a mistrial because of the alleged prosecutorial misconduct, nor did he request a cautionary instruction for the jury. We have often held that "we will not consider on appeal any objection which was not raised at the trial level."[10] Therefore, before we will reverse a conviction on this ground, we must be convinced that the alleged misconduct amounted to plain error.[11]

■ An appellant raising an error as plain error on appeal "must shoulder the heavy burden of demonstrating that the alleged misconduct raises a substantial and important question." *Garroutte v. State,* 508 P.2d 1190, 1191 (Alaska 1973). Furthermore, such error must be "obviously prejudicial." *Bowker v. State,* 373 P.2d 500, 505 (Alaska 1962); *Kugzruk v. State,* 436 P.2d 962, 964 (Alaska 1968).

"Where the misconduct fails to rise to the level of plain error, considerations of judicial economy dictate that we deal with the matter summarily."

*Garroutte v. State, supra,* at 1191.

■ We have concluded that Randall has not demonstrated a case of plain error with respect to the prosecutor's questioning on cross-examination. The issue of the source of Randall's injury was raised on direct examination and, therefore, was properly a subject of cross-examination.[12]

9. Appellant was not represented at trial by his present appellate counsel.

10. *Sidney v. State,* 408 P.2d 858, 862 (Alaska 1965); *E. g., McMaster v. State,* 512 P.2d 879, 884 (Alaska 1973); *Howard v. State,* 491 P.2d 154, 156–7 (Alaska 1971); *Dimmick v. State,* 449 P.2d 774, 776 (Alaska 1969).

11. Rule 47(b), Alaska R.Crim.P., provides that: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

12. Rule 43(g)(7), Alaska R.Civ.P., provides that:

"An adverse party may cross examine a witness as to any matter stated in the direct examination or connected therewith, and in so doing may interrogate the witness by leading questions."

Civil Rule 43(g)(7) applies to criminal trials. Rule 26(a), Alaska R.Crim.P.

The prosecutor's first reference to another fight as the source of Randall's injury was claimed to be improper. The trial judge admonished him against further reference to that other incident. However, defense counsel chose not to have the jury instructed to disregard the comment. The resumed cross-examination reflects the prosecutor's attempt to discover the type of injury Randall received which required his second hospitalization. He did not ask Randall how he received the second injury. Randall volunteered the information that he was beaten. Assuming, without deciding, that the prosecutor's cross-examination was improper, as appellant claims, we are unable to conclude that it resulted in a substantial interference with Randall's right to a fair trial.

The judgment entered below is AFFIRMED.