Dennis Scott WILLIAMS, Appellant,

v.

STATE of Alaska, Appellee.

No. 4078.

Supreme Court of Alaska.

May 29, 1981.

---

Richard B. Collins, Collins, Inc., P. C., Anchorage, for appellant.

W. H. Hawley, Asst. Atty. Gen., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

DIMOND, Senior Justice.

Dennis Williams appeals his conviction for second degree murder. We reverse the conviction because Williams did not receive

a fair trial, and we remand the case to the superior court for a new trial. We also express our views on matters alleged as error which may be pertinent to a retrial.

There were two events during Dennis Williams's trial which, in our opinion, require that his conviction for second degree murder be reversed. One was the trial court's refusal to order removal of handcuffs from a defense witness, Michael Williams (the defendant's brother). The other was the trial court's refusal to grant a mistrial following the prosecutor's statement in the presence of the jury that the hung jury at the previous trial had voted 11–1.

## I.

■ The defendant called his brother, Michael Williams to testify as an alibi witness. During a recess, Michael arrived in court in handcuffs. The defendant requested, and the state agreed, that the handcuffs be removed. Three security guards were in the courtroom at this time. One guard, however, informed the court that regulations required another security guard to be present if the handcuffs were to be removed. The trial judge ruled that the handcuffs would remain on Michael during his testimony unless another security guard could be found. In order to allow time for arrangements for another guard, defense counsel decided to call another witness and delay Michael's testimony until after the noon recess. When Michael finally testified, his handcuffs remained.

The defendant argues that the presence of handcuffs on his alibi witness prejudiced his defense. We agree. In *Anthony v. State*, 521 P.2d 486 (Alaska 1974), this court expressed disapproval of the physical restraint of a defendant at trial:[1]

[M]anacles, shackles and other physical restraints are, of course, to be avoided. Deviation from these standards is justified only to protect the safety and decorum of the court, to prevent a threatened

escape, or to respond to some other manifest necessity. Such measures should be taken only after the defendant has been given an opportunity for a hearing, and the restraints imposed should be the least intrusive which will accomplish the desired result.

*Id.* at 496 (footnotes omitted).

The *Anthony* court did not discuss the physical restraint of a defense witness. However, other courts which have restricted the use of physical restraint on defendants at trial have also applied their rulings to defense witnesses. *See, e. g., People v. Duran*, 16 Cal.3d 282, 127 Cal.Rptr. 618, 621 n.4, 545 P.2d 1322, 1325 n.4 (1976); *State v. Coursolle*, 255 Minn. 384, 97 N.W.2d 472, 476 (1959).[2] The Sixth Circuit has explained the rule as follows:

The general rule for shackling witnesses is that a defendant has a right to have his witnesses appear free of shackles, except in special circumstances where there is evident danger of escape or harm to individuals in the courtroom. The decision whether to shackle witnesses is left to the sound discretion of the trial judge. The reason underlying the rule is the inherent prejudice to the defendant since it is likely the jury will suspect the witness's credibility. The prejudice factor toward the defendant, although much less than the situation where the defendant is shackled, provides a valid point of comparison even though the shackled witness cases do not directly affect the presumption of innocence.

*Kennedy v. Cardwell*, 487 F.2d 101, 105 n.5 (6th Cir. 1973), *cert. denied*, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974).

The American Bar Association has recommended a similar rule: "Defendants and witnesses should not be subjected to physical restraint while in court unless the trial judge has found such restraint reasonably necessary to maintain order. If the trial judge orders such restraint, he should enter

---

1. The *Anthony* court also noted that guards should remain outside the observation of the jury. 521 P.2d at 496.

2. Other cases with similar holdings are discussed in Annot., 75 A.L.R.2d 762 (1961).

into the record of the case the reasons therefor." ABA Standards Relating to Trial by Jury § 4.1(c), at 11, 93 (Approved Draft 1968), *cited with approval in Anthony v. State*, 521 P.2d 486, 496 n.34 (Alaska 1974).

In this case, the trial judge's complete deference to the security guards' regulation [3] amounted to delegation of the decision regarding handcuffs to a nonjudicial officer. Commentary to the ABA Standards emphasizes that the trial judge must make a finding of exceptional circumstances justifying restraint:

> Although a number of trial judges have assumed that the officials responsible for custody of the incarcerated person are entitled to decide the need for physical restraint at trial, the appellate courts have continued to stress the fact that this important decision cannot be delegated to a nonjudicial officer.

ABA Standards Relating to Trial by Jury, at 95. According to the commentary, the standard requires:

> If the trial judge allows physical restraints to be used, he must state for the record the basis for his decision in this regard, and the record must also support the trial judge's conclusions, either by way of the individual's conduct during trial or by way of evidence adduced out of the presence of the jury on the question of physical restraint.

*Id.* at 96.[4]

There is no evidence in the record to establish any danger of violence or escape by Michael Williams, or any other manifest necessity for his restraint. Therefore, the trial judge's refusal to order removal of the handcuffs was unjustified, particularly in light of the fact that there were three security guards present in the courtroom.

The state argues that the defendant waived any objection with respect to the handcuffs by failing to reassert it when Michael was recalled after the noon recess. This argument is without merit.

Defense counsel objected to Michael's handcuffs and asked the trial judge to order their removal. The trial judge made it clear that the handcuffs would not be removed in the absence of a fourth security guard.[5] He also made it clear that his reason was the existence of the security regulation.[6] The purposes of the contemporaneous objection requirement were met because the defense request gave the court an opportunity to correct the handcuffs problem, and the court ruled and gave its reasons. *See Alexander v. State*, 611 P.2d 469 (Alaska 1980). Further defense objection was not required because it clearly would have been futile.

The state also argues that the defendant was not prejudiced because the testimony elicited from Michael made it clear that he was in jail because of a robbery conviction. This argument ignores the basic rationale for the rule against requiring a defense witness to appear in restraints. The prejudice to a defendant from requiring one of

---

3. *See* notes 5 and 6 and accompanying text *infra.*

4. The ABA Commentary further states, " 'In any case where the trial judge, in the exercise of sound discretion, determines that the defendant must be handcuffed or shackled, it is of the essence that he instruct the jury in the clearest and most emphatic terms that it give such restraint no consideration whatever in assessing the proofs and determining guilt. This is the least that can be done toward insuring a fair trial.' " ABA Standards Relating to Trial by Jury § 4.1(c), at 97 (Approved Draft 1968), *quoting State v. Roberts*, 86 N.J.Super. 159, 206 A.2d 200, 205 (1965).

5. The judge said, "If there's nobody available then [at the time of Michael's testimony] I—we don't take the cuffs off."

6. After the defense request for the removal of the handcuffs and a subsequent colloquy on a different matter, the trial judge told counsel for the defense and prosecution, "Gentlemen, we've got a problem with these handcuffs. I talked to the Lieutenant downstairs and there's no—there's nobody available and I'm not going to issue an order to these security people to take the handcuffs off in violation of their regulations." He later said, "[S]o it's on the record, I just am not going to issue an order which violates our regulations, because I recall some time ago some officer got discharged and I—he didn't get reinstated . . . ."

his witnesses to testify in handcuffs lies in the inherent psychological impact on the jury, not merely in the fact that the jury may suspect that the witness committed a crime. As the Sixth Circuit has noted, the jury is necessarily prejudiced against someone appearing in restraints " 'as being in the opinion of the judge a dangerous man, and one not to be trusted, even under the surveillance of officers.' " *Kennedy v. Cardwell*, 487 F.2d at 106, *quoting State v. Kring*, 64 Mo. 591, 593 (1877). Such prejudice greatly exceeds that resulting from knowledge that the witness has been convicted of a crime.[7]

Michael Williams's credibility was especially significant because he was an alibi witness. Specifically, Michael testified that at the time of the killing the defendant was at home in the trailer in which they both lived. Furthermore, from a review of the entire record, it appears that the state's case was not strong. In the light of the latter, together with the importance of Michael Williams's testimony, we cannot say that the trial court's improper refusal to order removal of Michael Williams's handcuffs did not appreciably affect the jury's verdict. Therefore, the conviction should be reversed. *See Love v. State*, 457 P.2d 622, 632 (Alaska 1969).

## II.

The other error which requires reversal of Dennis Williams's conviction stems from misconduct of the prosecutor. Prior to this incident of misconduct, the fact that the defendant had been previously tried was set before the jury several times by state witnesses or by the prosecutor in his formation of questions. The first reference to the

fact that this previous trial had ended in a hung jury was made by defense counsel when he asked defense witness Donna Bailey whether she had been subpoenaed "[f]or . . . the first trial that ended in a hung jury." No objection was made by the state.

The second reference to the hung jury came just after state's witness Jason Prior had testified to eating dinner with the prosecutor and his wife three or four times since the last trial. Following this testimony Prior said, "I didn't expect to testify again until I was called up." Defense counsel's next question was, "You didn't know that the first trial ended in a hung jury?" and Prior's answer was, "No, sir, not until I was told." At this point the prosecutor said, "May we have what the hung jury was then, that it was 11 to one. I mean my (indiscernible—interrupted)."

The trial court immediately said, "I'm going to instruct the jury to disregard that comment." A subsequent motion for a mistrial was denied.

The defendant argues on appeal that this refusal to grant a mistrial was error. We agree. The statement was not supported by the record,[8] and it is unquestionably improper for the prosecutor to intentionally refer at trial to facts outside the record. ABA Standards Relating to the Prosecution Function and the Defense Function § 5.9, at 129–30 (Approved Draft 1971). *See, e. g., United States v. Latimer*, 511 F.2d 498, 503 (10th Cir. 1975); *United States v. Spangelet*, 258 F.2d 338, 342 (2d Cir. 1958). More importantly, the vote of the jury at the previous trial was clearly irrelevant.[9] The prosecutor's statement was calculated to prejudice the defendant

---

7. Another, though perhaps less important, reason for the rule against shackling of either defendants or witnesses in court is that " 'the condition of the prisoner in shackles may, to some extent, deprive him of the free and calm use of all his faculties.' " *Kennedy v. Cardwell*, 487 F.2d 101, 106 (6th Cir. 1973), *quoting State v. Kring*, 64 Mo. 591, 593 (1877). *Accord*, ABA Standards Relating to Trial by Jury, *supra* note 6, at 94; Annot., 75 A.L.R.2d 762 (1961).

8. During argument on the defense motion for a mistrial, the prosecutor said his remark was

based on discussions with jurors after the first trial. Defense counsel, however, said that the attorneys had also been told that the hung jury vote was 8 to 4.

9. It is improper for a lawyer appearing in his professional capacity at trial to "[s]tate or allude to any matter that he has no reasonable basis to believe is relevant to the case." Alaska Code of Professional Responsibility DR 7–106(C)(1).

by leading the jurors to believe that, since eleven of twelve jurors had voted for conviction,[10] the defendant was probably guilty.

The trial court's reason for denying the defendant's motion for a mistrial was that the motion had been made too late. This was because the prosecutor's reference to the hung jury's vote occurred shortly before lunch break on Friday, February 24, and the defense motion for a mistrial was not made until the following Monday morning.[11]

■ The trial court erred in denying the motion for a mistrial on the ground that it was untimely. "[I]t is settled that when an objection and an admonition could not cure the prejudice caused by improper remarks, failure to object does not preclude urging the error on appeal." *People v. Terry*, 2 Cal.3d 362, 85 Cal.Rptr. 409, 432, 466 P.2d 961, 984 (1970), *cert. denied*, 406 U.S. 912, 92 S.Ct. 1619, 32 L.Ed.2d 112 (1972), *quoted in Alexander v. State*, 611 P.2d 469, 478 n.29 (Alaska 1980). The motion for a mistrial necessarily presumed that the prejudice from the prosecutor's remark was not curable by the trial court's admonition to the jury to disregard it. The trial court admitted as much by saying that if the defense had "asked for a mistrial at that time I would've probably granted it." Therefore, one purpose of the contemporaneous objec-

tion rule, "to require errors to be brought to the attention of the trial court in time for their correction so as to avoid the inconvenience and expense of a new trial," *Dimmick v. State*, 449 P.2d 774, 776 (Alaska 1969), was unattainable in this case. The other purpose "to obviate the temptation to save defenses for the purpose of obtaining a new trial on appeal," *Dimmick*, 449 P.2d at 776, was met because the defendant did move for a mistrial before the trial ended.

■ The state argues that the prosecutor's reference to the hung jury's vote was justified because "invited" by defense counsel's reference to the hung jury.[12]

Many courts approve the doctrine that prosecutorial misstatements which rebut improper inferences by defense counsel do not justify reversal. *E. g., United States v. Somers*, 496 F.2d 723 (3d Cir.), *cert. denied*, 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (1974). That doctrine, however, "serves to permit neutralization of improper defense arguments; it does not operate as a license for improper affirmative attacks upon defendants." *Somers*, 496 F.2d at 741.[13] The prosecutor's remark in this case cannot be characterized as mere neutralization of an improper defense remark and thus is not protected by any right of reply.

Moreover, we are reluctant to approve any rule which encourages unprofessional conduct by prosecutors as retaliation.[14] We

10. During argument of the defense motion for a mistrial the trial court noted that "when the prosecutor says it's 11 to 1 the jury's going to get ... the impression it's 11 for conviction and one for acquittal." The prosecutor responded, "I hope that's what they think."

11. The trial judge in ruling on the motion for a mistrial said that if the defense had asked for a mistrial at the time of the prosecutor's remark, "I would've probably granted it."

12. It is improper for defense counsel to intentionally inform the jury that a previous trial ended in a hung jury. *See Mount v. United States*, 333 F.2d 39, 43 & n.4 (5th Cir. 1964); *Tessmer v. United States*, 328 F.2d 306, 307 (5th Cir. 1964). However, defense counsel's reference to the hung jury appears to have been a spontaneous reaction to the previous statement by the witness rather than a deliberate attempt to prejudice the jury.

13. *Accord, United States v. Bursten*, 453 F.2d 605, 610–11 (5th Cir. 1971), *cert. denied*, 409 U.S. 843, 93 S.Ct. 44, 34 L.Ed.2d 83 (1972); *Patriarca v. United States*, 402 F.2d 314, 321 & n.6 (1st Cir. 1968), *cert. denied*, 393 U.S. 1022, 89 S.Ct. 633, 21 L.Ed.2d 567 (1969).

14. "The duty of the prosecutor is to seek justice, not merely to convict." ABA Standards Relating to the Prosecution Function and the Defense Function § 1.1(c), at 25 (Approved Draft 1971).

The state relies on *Davis v. State*, 501 P.2d 1026 (Alaska 1972). *Davis* is inapposite because it involved no unprofessional conduct by the prosecutor. Instead, "the prosecutor's ... remarks 'were within the range of reasonable inferences that could be drawn from the evidence and therefore [were] permissible.' " *Id.* at 1030.

agree with the Tenth Circuit, which has held:

> We can give no comfort to the proposition that unprofessional conduct upon the part of defense counsel opens the door to similar conduct by government counsel. The government's remedy, of course, lies with proper objection made to the trial court during the course of the trial.

United States v. Ludwig, 508 F.2d 140, 143 (10th Cir. 1974) (footnote omitted). Accord, People v. Bain, 489 P.2d 564, 569 (Cal.1971).

Finally, the state argues that the refusal to grant a mistrial was proper because any prejudice from the prosecutor's remark was alleviated by the trial court's cautionary instructions. As noted above, the court instructed the jury to disregard the prosecutor's comment about the hung jury immediately after it was made. At the end of the trial the court also instructed the jury as follows:

> Do not consider as evidence any statements, arguments, questions or remarks of counsel made during the trial. While not evidence, these generally are meant to help you understand the evidence and apply the law. Consider them in that light. Disregard any argument, statement, question or remark of counsel which has no basis in the evidence produced in open court.
>
> Questions by counsel may only be considered as they supply meaning to the answers; never speculate to be true any insinuations suggested by questions of counsel.

In some cases the prejudicial effect of improper prosecutorial remarks can be alleviated sufficiently by an instruction to the jury by the trial court. E. g., Brown v. State, 601 P.2d 221, 225–26 (Alaska 1979); Braham v. State, 571 P.2d 631, 641 (Alaska 1977), cert. denied, 436 U.S. 910, 98 S.Ct. 2246, 56 L.Ed.2d 410 (1978). However, the United States Supreme Court has recognized that prejudicial effects cannot be completely overcome by instructions to the jury, Bruton v. United States, 391 U.S. 123, 129, 88 S.Ct. 1620, 1624, 20 L.Ed.2d 476, 481 (1968). The Court stated that "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." Id. at 135, 88 S.Ct. at 1627, 20 L.Ed.2d at 485. The question becomes whether the remark was "so highly prejudicial as to be incurable by the trial court's admonition." United States v. Klein, 546 F.2d 1259, 1263 (5th Cir. 1977). The answer depends on the facts of the particular case. E. g., United States v. Vosper, 493 F.2d 433, 438 (5th Cir. 1974); United States v. Wells, 431 F.2d 432, 433–34 (6th Cir.), cert. denied, 400 U.S. 967, 91 S.Ct. 380, 27 L.Ed.2d 388 (1970).

In this case, we believe that the prosecutor's remark was so highly prejudicial as to be incurable by the trial court's admonitions. The trial judge indicated his belief as to the prejudice from the remark in saying that he probably would have granted a mistrial if the motion had been made at the time of the remark. As discussed in Part I above, the state's case was not particularly strong. Therefore, the trial court's denial of a mistrial was an abuse of discretion and a new trial should be granted to prevent a miscarriage of justice. See Anderson v. State, 438 P.2d 228, 233 & n.16 (Alaska 1968).

### III.

The defendant alleges various other instances of prosecutorial misconduct, mostly during final argument. None of these points were preserved by objection, and therefore we need not consider them unless they rise to the level of plain error. See, e. g., Alexander v. State, 611 P.2d 469, 477 (Alaska 1980); Randall v. State, 583 P.2d 196, 200 (Alaska 1978). An asserted error does not constitute plain error under Criminal Rule 47(b) "unless it affects a substantial right and is obviously prejudicial." Gilbert v. State, 598 P.2d 87, 92 (Alaska 1979).

However, we shall consider some of the points raised by defendant on this appeal in order to give direction in the event of a retrial.

## A.

During final argument the prosecutor referred to an incident during the defendant's first trial in which, according to a police officer, the defendant mouthed the words "you're dead" to the state's key witness, Jason Prior. *See* Part B *infra*. The defendant denied having made such a remark and Prior testified that he had not understood what the defendant had said. The prosecutor said:

> This matter of the prior testimony by Jason Prior about this mouthing you're dead. Now, you didn't have the opportunity to see just how shaken Jason was in the courtroom that day after this happened. I would ask you to keep in mind that you didn't have that opportunity.

The prosecutor's apparent purpose in referring to "how shaken" Prior had been was to corroborate the police officer's testimony that the defendant had threatened Prior. The state now concedes that this statement "had little if any basis in the evidence"[15] and that "the prosecutor should not have made this statement."[16] In the event of a retrial, such a statement should not be repeated.

## B.

The defendant claims that admission of certain testimony by Investigator Stearns was prejudicial error.

Stearns was present during the testimony of Jason Prior at the defendant's first trial. Stearns testified that while he was standing between the witness stand and the defendant's table he saw the defendant mouth something to Prior. Stearns claimed that, although he heard no voice, he saw the defendant "mouth what I [Stearns] felt was two words, and as I saw him mouth them I felt that he indicated to Mr. Prior, he said that, your [sic] dead."

The defendant now claims that this testimony should have been excluded because there was "no proper foundation or qualification of Stearns to allow him to interpret the 'mouthing' to mean 'you're dead.'" He also claims that admission of this evidence was error because it was prejudicial evidence of another crime for which he was not on trial, *i. e.*, violation of AS 11.30.320.[17]

The state argues that the defense waived these grounds for objection by failing to state them at trial. We agree. The testimony complained of on appeal was admitted after the following exchange:

Q Okay. At this last trial, were you in here when Jason Prior testified?

A Yes, sir.

Q And did you see any effort by the defendant to communicate in any way with Jason Prior?

MR. COLLINS: Your Honor, I'm going to object to that.

THE COURT: Do you want me to excuse—what grounds?

MR. COLLINS: Well, Your Honor, the— Mr. Prior testified that he was not aware of . . . .

MR. MERRINER: Well, objection on that. He can ask Mr. Prior anything he wants, but is there any objection to this man testifying as to what he saw? That's certainly no objection, and I don't want Mr. Collins to testify here and mislead the jury at this stage maybe on what occurred. I don't see any objection he's got as to this man

---

**15.** In fact, the argument contradicted the state's evidence, because Prior testified not only that he did not know what the defendant had said, but also that the defendant's mouthing at the first trial did not bother him much.

**16.** *See, e. g., Darling v. State*, 520 P.2d 793, 794 n.3 (Alaska 1974). The Code of Professional Responsibility provides that a lawyer appearing in his professional capacity before a tribunal shall not "[a]ssert his personal knowledge of the facts in issue, except when testifying as a witness." DR 7–106(C)(3).

The state's argument was that the alleged threat by the defendant against the witness showed consciousness of guilt by the defendant.

**17.** AS 11.30.320(1) makes it a crime to use "threats of force, or . . . a threatening . . . communication" to endeavor "to influence, intimidate, or impede a witness in a court of this state."

testifying on this score, and that certainly is done.

THE COURT: I don't know what grounds to exclude his testimony.

MR. COLLINS: All right, Your Honor.

 "The rule is well established that the ground of an objection must be clearly stated so that the court may intelligently rule upon the objection." *State v. Miller*, 79 N.M. 117, 440 P.2d 792, 795 (1968) (citations omitted). " '[I]f [evidence] is not objectionable on the ground stated, it is not error for the court to admit it, even though there might be some other proper reason for its rejection not raised by objection as made.' " *State v. Brierly*, 109 Ariz. 310, 509 P.2d 203, 215 (1973), *quoting State v. Evans*, 88 Ariz. 364, 356 P.2d 1106, 1111 (1960). Because there was no comprehensible objection, the point was not properly preserved for appeal. *Dimmick v. State*, 449 P.2d 774, 776 (Alaska 1969). Admission of the testimony was not plain error under Criminal Rule 47(b). *Gilbert v. State*, 598 P.2d 87, 92 (Alaska 1979).

### C.

The defendant alleges error in the admission of tape recorded statements to police by Jason Prior.

Dennis Williams and Jason Prior were both picked up by the police on August 15, 1977. They were initially interrogated separately. Prior at first denied any knowledge of the killing. However, when Investigator Stearns accused Prior of the killing, Prior responded by saying that Dennis Williams had done it. Shortly thereafter, Stearns recorded his questioning of Prior on tape. Plaintiff's Exhibit Tape 48 contains Prior's description of the events leading up to the killing, and a statement that Dennis Williams had done the shooting. Later Prior was taken down to the room where Dennis Williams was being questioned. When

asked to describe the killing, Prior stated that he, not Williams, had shot the victim. This statement is contained on Plaintiff's Exhibit Tape 42C. Still later on the same day, Prior was taken out by several police officers to look for the gun used in the shooting. He was again questioned about the killing, and this time he again stated that Dennis Williams had done the shooting. This statement is recorded on Plaintiff's Exhibit Tape 49. Prior also made a recorded statement to the police (Plaintiff's Exhibit Tape 51) concerning a robbery allegedly committed by Dennis Williams's two brothers. Both Prior and Williams were arrested for the murder, but the charge against Prior was dropped.

The tape containing Prior's statement that he had done the killing was admitted without defense objection during the testimony of Investigator Stearns. When Prior was called to testify he first answered a number of preliminary questions concerning his background and his relationship with the Williams brothers. Questioning then shifted to events surrounding police investigation of the killing. Prior testified that he had at first implicated Dennis Williams, and then had admitted to doing the shooting himself. At this point the prosecuting attorney introduced into evidence tapes 48, 49 and 51, which were admitted and played over the objection of the defense. Jason Prior was present while the tapes were played. Afterwards, he testified about the events surrounding the killing, and implicated the defendant, Dennis Williams.

The defense asserted a hearsay objection to the admission of the tapes. On appeal, the state argues that the tapes were admissible as prior consistent statements because Prior's credibility was at issue.[18] The state's brief notes that the cross-examination of Prior at the former trial indicated that the defense planned to attack Prior's credibility, therefore the prosecuting attor-

---

**18.** Evidence Rule 607(b) permits any party to offer evidence to support the credibility of a witness whose credibility has been attacked. Evidence Rule 801(d)(1)(B) treats prior consistent testimony which is offered to rebut an express or implied charge of recent fabrication or improper influence or motive as nonhearsay which can therefore be admitted as substantive evidence. These rules were not in effect at the time of the trial, but would be applicable in the event of retrial.

ney wanted to rehabilitate Prior on the issues of credibility raised at the former trial before Prior gave the bulk of his testimony.

A witness may be rehabilitated by the introduction of a prior statement consistent with his present testimony after the credibility of the witness has been attacked. C. McCormick, Law of Evidence § 49, at 103, 105 (2d ed. 1972). We conclude that the tapes were improperly admitted because, at the time they were admitted, Prior's testimony at this trial had not been attacked. In fact, Prior had not even given his present testimony on the events of the killing when his prior consistent statements were introduced.

However, because of the former trial, the judge and all the parties were aware that an attack on Prior's credibility would be soon forthcoming. In fact, the attack was made and vigorously so. Therefore, the error in the admission of the tapes was merely one of timing, and under the circumstances of this case can be regarded as harmless. We are able to say fairly that the admission of the tapes did not appreciably affect the jury's verdict against defendant. *Love v. State*, 457 P.2d 622 (Alaska 1969).

D.

The defendant alleges error in the admission of a foreign document.

The alleged murder weapon was a .38 caliber Smith & Wesson revolver, state's exhibit no. 17. The state alleged that exhibit no. 17 belonged to Roger Fuller, an acquaintance of the defendant. As proof, the state introduced exhibit no. 58, a copy of a Canadian Customs and Excise document, purporting to show that Fuller had brought the murder weapon through Canada on his way to Alaska.[19] The defendant objected on hearsay grounds because the document had not been authenticated.

The state produced no evidence at trial to show that the document was what the state claimed it to be. It is error to admit a document over a hearsay objection without any foundation to support its authenticity. *See Palfy v. Rice*, 473 P.2d 606, 612 (Alaska 1970).

However, any error from admission of the document was harmless in light of the defendant's testimony that exhibit no. 17 (the alleged murder weapon) belonged to Fuller. Thus, the defendant admitted the fact which the state sought to prove by admission of the document.

After the trial the state requested judicial notice of the fact that a properly authenticated copy of the foreign document was identical to exhibit no. 58 produced at trial. This court granted the motion for judicial notice on November 8, 1979. Therefore, the document may be admitted at a retrial.

E.

The defendant alleges error in connection with the erasure of a tape recording of a police interview with Judy Izykowski, a rebuttal witness for the state. The defendant claims that erasure of the tape by police denied him due process and that as a result the indictment against him should be dismissed.

Izykowski did not testify at the defendant's first murder trial. She arrived in Anchorage the night before her testimony in the second trial began, after flying from her parents' home in Utah. She was met at the airport by two police officers, Investigators Stearns and Miller, and taken to police headquarters for an interview.

Police testimony was that approximately the first fifteen minutes of the interview was tape recorded. It is undisputed that during this time Izykowski gave an account of the night of the killing that was favorable to the defendant. According to Izykowski's testimony, she initially told the police that both Prior and the defendant

19. The serial numbers on the document were the same as the serial numbers on the weapon admitted as exhibit no. 17.

had come into the trailer (in which she and they lived) after arriving in a car driven by the victim, Hazarabedian. This is significant because her trial testimony was that only the defendant entered the trailer at that time and that the defendant had retrieved a gun. Izykowski also told police that Prior told her he, and not the defendant, had shot the victim. Izykowski changed her version of the facts after the police and prosecutor told her they did not believe her first story was true.

Investigator Stearns testified that he turned off the tape recording when the prosecutor arrived and that nothing was recorded after that. He testified that he turned the tape in for erasure on the day after the interview because the tape was garbled and because notes had been taken of the entire interview.

The defendant's due process claim is based on the argument that erasure of the tape deprived him of a valuable tool for impeaching Izykowski.

Destruction of a tape recording of statements by anyone with relevant knowledge violates the spirit of Criminal Rule 16.[20] "Law enforcement agencies are expected to preserve such tape recordings, and our courts should critically examine excuses given for destruction." *Oksoktaruk v. State*, 611 P.2d 521, 528 (Alaska 1980). Nevertheless, the destruction in this case did not deny the defendant due process and does not require dismissal of the indictment or any other sanction.

■■■■■ Destruction of evidence violates due process only if the evidence "might have led the jury to entertain a reasonable doubt about the defendant's guilt." *E. g., Wyrick v. State*, 590 P.2d 46, 46 n.1 (Alaska 1979); *Catlett v. State*, 585 P.2d 553, 557 (Alaska 1978). Even assuming that the tape recording was understandable before it was erased, it would have been merely cumulative of other evidence at trial,[21] because Izykowski admitted in her testimony that she had made the earlier inconsistent statements. Izykowski's testimony was substantially impeached not only by evidence of her initial statements to police, but also by the inconsistency of her testimony at trial. Therefore, it is unlikely that availability of the tape recording would have added anything to the defendant's case.[22] *See, e. g., Braham v. State*, 571 P.2d 631, 646 (Alaska 1977), *cert. denied*, 436 U.S. 910, 98 S.Ct. 2246, 56 L.Ed.2d 410 (1978).

---

**20.** Rule 16(b)(1)(i) requires the prosecutor to produce any recorded statements by persons with relevant knowledge. Rule 16(b)(4) extends the prosecutor's obligations to material in the possession or control of others who have participated in the investigation and "who either regularly report or with reference to the particular case have reported to his office."

Even if the tape recording was so garbled that it was not understandable, it should not have been erased. "Evidence in question should not be destroyed based on an investigating officer's evaluation of its usefulness." *Catlett v. State*, 585 P.2d 553, 558 n.5 (Alaska 1978). Preservation of the recording would have made litigation of this issue unnecessary.

**21.** This court has consistently refused to find that preservation or disclosure of evidence could have created a reasonable doubt about the defendant's guilt when the evidence which was destroyed or suppressed would have been merely cumulative of other evidence at trial. *Catlett*, 585 P.2d at 557; *White v. State*, 577 P.2d 1056, 1059–60 (Alaska 1978); *Braham v. State*, 571 P.2d 631, 645–48 (Alaska 1977), *cert. denied*, 436 U.S. 910, 98 S.Ct. 2246, 56 L.Ed.2d

410 (1978); *Torres v. State*, 519 P.2d 788, 797 (Alaska 1974).

**22.** The state argues that due process was not violated because the erasure was done in good faith. An officer's good faith, however, does not justify destruction of material evidence. *See White v. State*, 577 P.2d at 1060 n.14; *Lauderdale v. State*, 548 P.2d 376, 381–82 (Alaska 1976). *See also Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104, 109 (1972); *State v. Wright*, 87 Wash.2d 783, 557 P.2d 1, 4, 7 (1976). The reason is that the "purpose of the duty of preservation is not to punish the police but to insure a fair trial for the accused." *Wright*, 557 P.2d at 7, *citing Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215, 218 (1963). The motive for destruction is relevant only when the absence of a good faith explanation raises the inference that the evidence would have been detrimental to the prosecution, thus establishing materiality of the evidence. *See People v. Hitch*, 12 Cal.3d 641, 117 Cal.Rptr. 9, 18 n. 7, 527 P.2d 361, 370 n.7 (1974); *State v. Wright*, 557 P.2d at 6–7.

The judgment of conviction is RE-VERSED and the case REMANDED for a new trial.

BOOCHEVER, J., not participating.

BURKE, Justice, dissenting in part.

Given the absence of proof of any reason not to do so, except a departmental regulation, I agree that the trial court abused its discretion in not ordering Michael Williams' handcuffs removed while he was testifying. I agree also that the prosecutor's amateurish remark concerning the first jury's vote was improper. I am not convinced, however, that the errors complained of appreciably affected the jury's verdict. Thus, I would affirm Williams' conviction.

Otherwise, I concur.