Courtney PRITCHARD, Appellant,

v.

STATE of Alaska, Appellee.

No. 6934.

Court of Appeals of Alaska.

Dec. 23, 1983.

William Grant Callow, Asst. Public Defender, Dana Fabe, Public Defender, Anchorage, for appellant.

Peter A. Michalski, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

OPINION

COATS, Judge.

A jury convicted Courtney Pritchard of theft by deception, AS 11.46.180,[1] for selling to an undercover police officer a substance which Pritchard allegedly falsely represented to be cocaine. Pritchard appeals his conviction to this court. We reverse.

Pritchard first argues that the trial judge, S.J. Buckalew, Jr., erred in denying motions that he made to dismiss the grand jury indictment. However, these motions were not raised until trial, either during jury selection or after the jury had been selected. The motions to dismiss the indictment were clearly untimely, and Judge Buckalew's denial of Pritchard's motions would be appropriate on that ground alone.

---

1. AS 11.46.180 reads in part as follows:

    *Theft By Deception.* (a) A person commits theft by deception if, with intent to deprive another of property or to appropriate property of another to himself or a third person, he obtains the property of another by deception.

The motions were not made prior to trial as required by the pretrial order and the criminal rules. *See* Alaska R.Crim.P. 12(b)(2), 12(c), 12(e) and 16(f)(3). It is also clear that the evidence of Pritchard's guilt which was presented to the grand jury was so strong that the grand jury's decision to indict was clearly not affected by the allegedly improper information. *Oxereok v. State,* 611 P.2d 913, 916 (Alaska 1980). We conclude that Judge Buckalew did not err in denying Pritchard's motions to dismiss the indictment.

Pritchard's main argument on appeal is that Judge Buckalew erred in failing to grant a mistrial motion after the prosecutor made improper statements in his final argument. It is necessary to set out a brief factual background to explain our decision on this issue. Pritchard was prosecuted for theft by deception for selling a substance which he represented to be cocaine to an undercover police officer. The evidence against Pritchard was strong. An undercover special police officer, Thane Humphrey, testified that Pritchard sold him a substance, representing it to be cocaine. A chemist testified that he tested that substance and did not find cocaine or other controlled substances. Pritchard told police officer Terry Gonsalves that he sold an undercover police officer "straight cut" [2] for $1,200. Pritchard also told police officer Mark O'Brien, when O'Brien said he worked for the Metro (drug) Unit, "you're the guys I ripped off."

▮ Pritchard did not testify. However, he argued that the evidence against him was insufficient because the state had not proven beyond a reasonable doubt that the substance that he sold was not cocaine. Pritchard's argument was that the police and the chemist treated the case like a drug prosecution where they test only a small portion of the alleged drug. If the test shows that the tested substance contains cocaine, that is a sufficient test. Pritchard argued that to prove that the substance which he sold did *not* contain any cocaine, more extensive testing was necessary.

Pritchard's counsel argued in part the following:

> In short, ladies and gentlemen, they treated it like a simple drug prosecution. They shipped that stuff over to the laboratory and said we want to know if any cocaine—any controlled substance in there. It comes back no. They didn't send over any special request afterwards. They didn't send over any special instructions. *They didn't even submit it for retesting after the initial testing.* In other words, they come—they—they thought they had themselves a drug case, they gathered evidence as if it was a drug case, they found out they—that they had another kind of case, they didn't develop the evidence to support the charge. [Emphasis added.]

The prosecutor did not object to the original assertion by defense counsel that the substance had not been retested. In fact there had been no testimony during the trial about whether the substance had been retested or not. Instead, the prosecutor addressed defense counsel's remarks in his closing argument:

> Well, defense counsel has told you that there was no retest done on any of these materials. *And there was a retest.* Of course I should have objected to Mr. McGee's [defense counsel's] statement saying there was no retest because that's not in evidence. And he can object to me just telling you that there was retested more than one time because that's not in evidence. [Emphasis added.]

The following exchange then occurred in front of the jury:

> MR. McGEE: In fact, Your Honor, I'm going to do more than just object at this juncture. I don't think that [the prosecutor] has any—has any right to argue that there was any retesting done when it's not in evidence.

> MR. OLSON: Well, that's the point I'm making, Your Honor. [Indiscernible—simultaneous speech] . . . .

**2.** Cocaine is frequently cut or diluted by adding to it substances which look like cocaine.

MR. McGEE: And in fact there's no evidence—in fact there's no evidence—simply no evidence at all that any retesting was done after July and August of this year. So basically he's allowed to get up and call me a liar.

MR. OLSON: *I can provide proof on that if the court wants,* but my point was
. . . .

THE COURT: His point was [indiscernible—simultaneous speech] . . . .

MR. OLSON: My point is it's not in evidence and they shouldn't concern it—themselves with either one of those statements. That's the point I'm making to the jury. And . . . .

MR. McGEE: I'll make application to the court—I'm sorry for interrupting. But I will make application to the court
. . . .

MR. OLSON: That's fine. That's fine. And that's the point I'm making. You're not supposed to consider anything that wasn't testified to. If it didn't come from the witness chair, it didn't come from physical evidence. Not what Mr. McGee tells you, and not what I tell you. So you have to base your decision solely upon what you heard. [Emphasis added.]

It appears from counsel's discussion of the mistrial motion, which took place out of the presence of the jury, that another chemist, Chris Beheim, had originally tested the substance that Pritchard sold as cocaine. The prosecution later had the chemist who testified at trial, William Chambers, test the substance, apparently because it was easier or cheaper to have him testify than Mr. Beheim. However, the prosecution never introduced any evidence at trial that Mr. Beheim had performed any tests.

Pritchard now argues that the prosecutor's introduction of a fact not in evidence (the retesting), and the ensuing taint on defense counsel's credibility (the implication

that defense counsel lied to the jury) justify a mistrial. The state admits that the prosecutor's statement was improper, but argues that it was not so prejudicial that it denied Pritchard a fair trial.

The standard which we apply on review is whether the trial court's denial of the motion for mistrial was clearly erroneous. *Roth v. State,* 626 P.2d 583, 585 (Alaska App.1981). We have reviewed the record and conclude that, although the issue is extremely close, the trial court erred in not granting a mistrial. We find that the analysis of the supreme court in *Williams v. State,* 629 P.2d 54 (Alaska 1981) is particularly persuasive. In *Williams* the defense attorney brought out, in questioning a witness, that the case had previously ended with a hung jury. The prosecutor then remarked, "May we have what the hung jury was then, that it was 11 to one." *Id.* at 58. The supreme court reversed the conviction in that case, and concluded that the trial court erred in not granting a mistrial. The prosecution claims in the instant case that Pritchard's attorney misrepresented evidence [3] and that, to some extent, this justifies the prosecutor's conduct. In *Williams* the supreme court said:

Many courts approve the doctrine that prosecutorial misstatements which rebut improper inferences by defense counsel do not justify reversal. That doctrine, however, "serves to permit neutralization of improper defense arguments; it does not operate as a license for improper affirmative attacks upon defendants." The prosecutor's remark in this case cannot be characterized as mere neutralization of an improper defense remark and thus is not protected by any right of reply.

Moreover, we are reluctant to approve any rule which encourages unprofessional conduct by prosecutors as retaliation.

---

**3.** Pritchard points out that his statement would have clearly been proper if he said, "*there is no evidence* that they submitted it (the alleged cocaine) for testing after the initial testing." He contends that based upon a record which did not show a retest, he should be able to argue that there was no retest. We conclude that to the extent Pritchard's counsel made an improper argument, the violation was minor. It certainly did not call for the retaliation that he received.

We agree with the Tenth Circuit, which has held:

> We can give no comfort to the proposition that unprofessional conduct upon the part of defense counsel opens the door to similar conduct by government counsel. The government's remedy, of course, lies with proper objection made to the trial court during the course of the trial.

*Id.* at 59–60 (footnotes and citations omitted).

In our view the *Williams* case does involve much more egregious conduct on the part of the prosecution. Also, we note that in the *Williams* case, in arriving at its decision that reversal was required, the court observed that the prosecution case was not strong. In the instant case the prosecution's case was strong. Still, we conclude that reversal is necessary. Pritchard rested his chances for acquittal on the argument that the substance which he sold had not been adequately tested. His defense was difficult in part because logically he had either committed a crime by selling cocaine or he had committed a crime by selling a substance which he falsely represented was cocaine. He therefore had to convince the jury that the prosecution had simply not met its burden of proof that the substance which he sold was not cocaine. Obviously he was walking a fine line given the evidence in this case. Still, to the extent that he had any hope at all, that hope was possibly dashed by the prosecutor's representation to the jury that the substance in question had been tested more thoroughly than the prosecution had shown at trial and the suggestion that the defense attorney was misrepresenting the amount of testing which had been done. We think that the better course of action in this case, and the one which in the long run will have the better effect in this jurisdiction on how trials are conducted, is to reverse the case so that the prosecutor does not benefit from his misconduct.[4]

Pritchard argues that if we find that the prosecutor's actions should have resulted in a mistrial we should also find that his case cannot be retried because retrial is barred by constitutional double jeopardy provisions. *Piesik v. State,* 572 P.2d 94, 96–97 (Alaska 1977); *White v. State,* 523 P.2d 428, 430 (Alaska 1974); *See Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). This issue has not been presented to the trial judge and we therefore conclude that it would be premature for this court to rule on this issue.

The conviction is REVERSED. The case is REMANDED.

SINGLETON, Judge, dissenting.

I agree with the majority that Olson's ill-considered comment was inappropriate.[1] I am satisfied, however, that any error was harmless and consequently that Judge Buckalew did not abuse his discretion in denying the mistrial, cautioning the jury, and proceeding with the trial.

We may not reverse a judgment of the trial court for error unless we are convinced that the error was not harmless. "Any error, defect, irregularity or variance which

---

**4.** The state points out that the trial judge gave an instruction which stated in part that "arguments of counsel are not evidence." We do not believe that this instruction cured the prejudice to Pritchard or that a more strongly worded instruction along the same lines would have cured the prejudice. *Cf. Williams v. State,* 629 P.2d 54, 60 (Alaska 1981).

**1.** Defense counsel clearly has the right to argue in support of a Scotch verdict, *i.e.,* that the prosecution has failed to sustain its burden of proof. In so doing he may advance a theory of the case explaining the state's evidence in a manner consistent with innocence and may point to deficiencies in the state's case to bolster that theory. He may not, however, state to be true something he knows to be false. Thus, for example, he may not base his argument on the nonexistence of evidence which in fact was present but was suppressed on motion by the defense. *See, e.g., State v. Dudley,* 104 Idaho 849, 664 P.2d 277 (Idaho App.1983) (proper to preclude defendant from arguing that excluded evidence doesn't exist). Nevertheless, if Olson believed defense counsel was violating this rule he should have objected and taken the matter up out of the presence of the jury. *See Williams v. State,* 629 P.2d 54, 58–60 (Alaska 1981).

does not affect substantial rights shall be disregarded." Alaska R.Crim.P. 47(a). In *Love v. State,* 457 P.2d 622 (Alaska 1969), the supreme court discussed an appropriate harmless error test for nonconstitutional errors. Unfortunately, the court adopted two conflicting tests. Under one test, the appellate court must reverse if it finds an error and is in doubt whether the error affected the verdict; under the other test, the appellate court must affirm if it is in doubt whether the error affected the verdict. On the one hand, the court cited with apparent approval Justice Rutledge's opinion in *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), as follows:

> But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

328 U.S. at 765, 66 S.Ct. at 1248, 90 L.Ed. at 1566–67.

Stated this way, the rule parallelled the test proposed by former California Chief Justice Traynor in *The Riddle of Harmless Error* 35 (1970): "Unless the appellate court believes it highly probable that the error did not affect the judgment, it should reverse." Under this view the appellant has the burden of proving that an error occurred but once he satisfies this burden, the burden then shifts to the appellee to convince the court that the error did not affect the outcome.[2]

Unfortunately the *Love* opinion went on to adopt a conflicting test:

> The principles of harmless error set forth in today's opinion at least parallel the authority upon which *Daniels v. State, supra,* [388 P.2d 813 (Alaska 1964)] was based. The *Daniels* case relied on *State v. Dutton,* 83 Ariz. 193, 318 P.2d 667, 671 (1957). The court there said: "[H]ad the error pointed out not been committed is there reasonable probability that the verdict might have been different? In answering this question, the members of this court must necessarily put themselves, as nearly as possible, in the position of the jury in order to determine whether, as reasonable men, the error committed probably affected their verdict."

457 P.2d at 631 n. 15. This statement of the test shifts the burden of proving prejudice as well as error to the appellant. If the court cannot say that the error "probably affected the verdict," it must affirm. Thus in cases of doubt the court will affirm.

It is clear that the supreme court recognized that the test set out in note 15 shifted the burden of proving prejudice to the appellant by its treatment of the United States Supreme Court's test of harmless error in constitutional cases in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, *reh'g denied,* 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967). In *Love,* 457 P.2d at 632–634, the Alaska Supreme Court contrasted its harmless error rule, apparently as set out in note 15, with the *Chapman* rule and found two significant distinctions. First, the beneficiary of the error in the trial court under *Chapman* has the burden to show that it was harmless and, second, the court "must be able to

2. The phrase "burden of proof" is ambiguous. It can mean the burden of raising an issue through the pleadings, the burden of offering evidence on the issue, or the ultimate burden of persuasion, *i.e.,* identifying the party who loses if the court is in doubt. For this reason Justice Traynor advocates not using the term "burden of proof" in evaluating the harmfulness of errors. Traynor, at 25–26. So long as we recognize that the appellant always has the burden of pleading, *i.e.,* arguing the error, and that neither party can produce evidence in an appellate court, and we focus attention only on the ultimate burden of persuasion which serves to identify the party who loses if the court is in doubt after reviewing the record and hearing argument, the phrase "burden of proof" as used in *Love* is not misleading.

declare a belief that it was harmless beyond reasonable doubt." *Id.* at 633, *quoting Chapman,* 386 U.S. at 24, 87 S.Ct. at 828, 17 L.Ed.2d at 711. Thus in cases of doubt the court should reverse.

The ambiguity in *Love* was resolved in *Poulin v. Zartman,* 542 P.2d 251, 261 (Alaska 1975), a civil case. The court held that the harmless error test it would follow in civil and criminal cases would be the same. It then stated the rule as follows. First, "There is no doubt that appellant has the burden of proving both error and prejudice," citing *Zerbinos v. Lewis,* 394 P.2d 886, 889–90 (Alaska 1964). Second, it quoted the standard from note 15 in *Love:*

> [T]he members of this court must necessarily put themselves as nearly as possible in the position of the jury in order to determine whether, as reasonable men, the error committed probably affected their verdict.

*Poulin v. Zartman,* 542 P.2d at 261, *quoting Love,* 457 P.2d at 631 n. 15.

In conclusion, under current law the appellant has the burden of proving both error and prejudice. In order to show prejudice, he must establish that the error probably affected the verdict, *i.e.,* prevented an acquittal. Applying this test to the facts of this case, it is inconceivable to me that the alleged error "probably affected the verdict." Pritchard's theory of the case can be stated as follows: A defendant may be prosecuted for sale of cocaine even though the quantity of cocaine transferred is not in commercial quantities and in fact is not in a usable quantity. *Moreau v. State,* 588 P.2d 275, 285 (Alaska 1978). Consequently, the state, in testing a material for cocaine, may test by sample and if any sample contains cocaine, in however small a quantity, the state may stop testing and proceed to trial. In contrast, Pritchard argues, he was charged with fraud, AS 11.46.180 (theft by deception), *i.e.,* with selling something misrepresented as cocaine. Therefore, he rea-

sons, the state had the burden of proving the exact converse of a cocaine prosecution. It must prove to the satisfaction of the jury that the material sold was free of cocaine in however slight an amount. To do so it could not test by sample but must test all of the material to exclude the possibility that some cocaine, however minimal, was present.

A defendant, of course, is entitled to argue any theory of the facts to the jury however incredible that theory is, but he is not entitled to argue a theory of law that is incredible. It is clear that defendant's theory of the case is wrong as a matter of law. Pritchard was not charged with failing to sell a trace of cocaine. He was charged with fraud; he represented to the "victim" that the material in question was cocaine in commercial quantities or at least in usable quantities. Thus, as a matter of law, it would be quite possible for Pritchard to be convicted of sale of cocaine on the theory that he sold a trace of cocaine and fraud if the trace of cocaine did not constitute a "commercial or usable" quantity of the drug. Conviction of one offense would not be inconsistent with conviction of the other.

Pritchard's theory of defense conceded that there was a sale of some substance to the officers. There is no evidence in the record that what Pritchard sold contained cocaine in commercial quantities. His theory of the case really doesn't dispute this. Under the circumstances, therefore, his theory that there may have been a trace of cocaine in the product transferred is simply irrelevant. Any jury confusion caused by the prosecutor's unfortunate remark could not possibly have affected their verdict. I would affirm the decision of the trial court.[3]

---

**3.** My analysis of the record, and my conclusion that the error was harmless without regard to any attempted curative action by the court, makes it unnecessary for me to discuss the majority's view that you can find an "abuse of

discretion" where "the issue is extremely close" or to discuss the effect of a cautionary instruction on what otherwise would be harmful errors if not cured. *See Roth v. State,* 626 P.2d 583, 585 (Alaska App.1981).