Winston John **MEYER**, Appellant,

v.

**STATE of Alaska,** Appellee.

No. 4751.

Supreme Court of Alaska.

May 1, 1981.

W. Clark Stump, Stump & Stump, Ketchikan, for appellant.

Michael A. Thompson, Asst. Dist. Atty., Ketchikan, Victor C. Krumm, Dist. Atty., and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., CONNOR, BURKE, and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

CONNOR, Justice.

This is an appeal from an order denying post-conviction relief. Appellant sought post-conviction relief on the grounds (1) that prejudicial error occurred when the jury misinterpreted an expert witness instruction, (2) that his right to be present at

all stages of the criminal proceeding was denied, (3) that his confession was involuntary, (4) that he was not informed that by pleading guilty in a 1977 case he risked revocation of probation granted for an earlier criminal conviction in 1976, and (5) that he was denied a transcript which would have aided him in seeking a new trial.

In 1975, John Meyer was indicted for burglary not in a dwelling and larceny in a building. On January 5, 1976, he was convicted of those offenses. He was sentenced on April 14, 1976, to three years of imprisonment, with all but 90 days suspended, and was placed on probation for the duration of the suspended sentence.

In 1977, Meyer was involved in additional offenses. In response to charges brought by the state, he entered a plea of guilty to burglary, larceny in a building, and forgery. He was sentenced to three years imprisonment for these crimes. The court then revoked Meyer's probation for the 1976 sentence, and ordered him incarcerated for the balance of the 1976 three year sentence, to be served consecutively to the 1977 sentence. Meyer filed a notice of sentence appeal, but later withdrew it.

In both 1978 and 1979 Meyer filed applications for post-conviction relief under Criminal Rule 35. These were denied. This appeal was then taken.

I

Meyer's first claim for relief was based upon affidavits of two jurors who returned the verdict in January of 1976. The affidavits indicated that the jurors misunderstood an expert witness instruction. Prior to sentencing, one juror approached the judge and stated that because of the expert witness instruction, one or more jurors felt compelled to accept as fact the testimony of one of the witnesses. That witness was the detective who took Meyer's confession, whose testimony was crucial to the prosecution's case. The judge reassembled the jury to discuss its interpretation of the instruc-

tion. After considering the jurors' comments, the judge decided not to order a new trial. The question now before us is whether the misinterpretation of an instruction, brought to the attention of the judge in the form of affidavit or testimony, is sufficient to impeach the jury's verdict.

Impeaching a verdict based upon jurors' affidavits is generally discouraged. Barring evidence of fraud, bribery, forcible coercion, or an obstruction of justice, the verdict must remain intact. In *West v. State*, 409 P.2d 847, 851–52 (Alaska 1966), after the jury was discharged, counsel obtained the jury foreman's affidavit stating that due to mental and physical exhaustion he felt pressured to vote for a conviction. There we held that exhaustion was not sufficient to warrant impeachment of the verdict. We will apply a similar principle to the misunderstanding of instructions. It is not claimed that the expert witness instruction was erroneous, but only that some jurors misinterpreted it as requiring that the testifying detective be regarded as an expert witness. Written language can convey different shades of meaning to different readers, depending upon their various backgrounds and the degree of their mental development. That clearly written instructions may be misinterpreted by a juror is simply one of the hazards of the jury trial process. If we permitted post-verdict inquiry into a juror's reasoning processes, as a means of impeaching the verdict, it would have a crippling effect upon all trials by jury. The superior court correctly held against appellant on this question.

II

When the superior court recalled the jury to discuss the jurors' interpretation of the instruction, neither Meyer, his counsel, nor the state's counsel were present. Meyer asserts that this was a denial of his right, under Amendment XIV, section 1 of the United States Constitution,[1] article I,

1. Amendment XIV, § 1, of the U.S. Constitution states in part:

"[N]or shall any state deprive any person of life, liberty, or property, without due process of law . . . ."

section 7 of the Alaska Constitution,[2] and Criminal Rule 38,[3] to be present at all stages of the trial. He argues that the post-verdict conference is a stage of the trial requiring the presence of the defendant. We agree, but find the error harmless.

In *State v. Hannagan*, 559 P.2d 1059, 1063 (Alaska 1977), we noted the common law origins of the defendant's right to be present at trial and the constitutional dimension of this right. We noted that while this right had been implemented as a procedural requirement by Criminal Rule 38, due to its constitutional basis a violation of the rule compels reversal unless "harmless beyond a reasonable doubt." *Id.* at 1065.

While the post-verdict conference which occurred here is not expressly within the terms of Criminal Rule 38, we conclude that the conference was within the intended scope of the rule.[4] Thus we must determine whether, based on the evidence, the state and federal constitutional error was harmless beyond a reasonable doubt. We conclude that it was.

The purpose of the post-verdict conference was to determine whether the jury's misunderstanding of the expert witness instruction was so substantial as to merit impeachment of the verdict. We have held in Section I, *supra*, that juror misinterpretation of jury instructions is one of the hazards of the jury trial process and is insufficient to impeach the verdict. Thus, as a matter of law, the post-verdict conference could not have resulted, on these facts, in impeachment of the verdict.[5] The defendant's presence therefore would not have impacted the trial court's decisional process, and his exclusion, while error, was harmless [6] beyond a reasonable doubt.[7]

2. Article I, § 7 of the Alaska Constitution states in part:
    "Due process. No person shall be deprived of life, liberty, or property, without due process of law...."

3. Alaska Rule of Criminal Procedure 38 states:
    "(a) PRESENCE REQUIRED. The defendant shall be present at the arraignment, at the preliminary hearing, at the time of plea, at the omnibus hearing, and at every stage of the trial, including the impaneling of the jury and return of the verdict, and at the imposition of sentence, except as otherwise provided in this rule."

4. In *Hannagan*, 559 P.2d at 1065 n.20, we noted that reversible error occurs where the defendant's presence could have had an impact on the decisional process. Many past cases have dealt with the decisional process of the jury. *See Lee v. State*, 509 P.2d 1088 (Alaska 1973) (prejudicial error where jury returned verdict in defendant's absence because had he been present, defendant could have insisted on a jury poll, thus exposing each juror to the psychological impact of announcing his decision directly to the defendant); *Noffke v. State*, 422 P.2d 102 (Alaska 1967) (prejudicial error where judge conducted ex parte communication with jury, during their deliberations, regarding their request for additional instructions because had defendant been present he could have objected to the new instructions).
    Other decisions, however, show that the decisional process consideration is not limited to solely the jury's decision making. *See Koehler v. State*, 519 P.2d 442 (Alaska 1974) (prejudicial error to discharge hung jury in absence of defendant as defendant's presence could have had a significant impact on the court's exercise of discretion in deciding whether or not to discharge the jury); *Speidel v. State*, 460 P.2d 77 (Alaska 1969) (prejudicial error to hold presentence conference in defendant's absence as defendant could have supplied the judge with additional information, thereby directly affecting the sentence); *Brown v. State*, 372 P.2d 785 (Alaska 1962) (prejudicial error where defendant was absent from hearing held to determine whether his wife would waive her spousal privilege and testify as a defense witness; had he been present, the defendant might have been able to convince his wife to waive the privilege).
    Similarly, in this case Meyer's presence, in the abstract, could have had an impact on the trial court's decision of whether or not to impeach the jury's verdict. Accordingly his presence was required. In light of our holding in Section I, *supra*, however, this error was harmless.

5. We note parenthetically that when asked by the trial court whether the instruction at issue lead any juror to the conclusion that they "had to convict" Meyer, no juror responded affirmatively.

6. *See Gafford v. State*, 440 P.2d 405 (Alaska 1968), *cert. denied*, 393 U.S. 1120, 89 S.Ct. 996, 22 L.Ed. 125 (1969) (harmless error where judge communicated with jury outside defendant's presence, informing jury that notwithstanding their request, defendant's presence at reading of verdict was legally required); *Kugzruk v. State*, 436 P.2d 962 (Alaska 1968) (harmless error where defendant excluded from

## III

Meyer next alleges that his confession, obtained while in the state jail, was made under the influence of drugs prescribed for epilepsy and, therefore, was not a product of his free will. Evidence presented at trial on this point is contradictory. Although Meyer's mother testified that he had neglected to take the medicine on the day of the arrest, and was probably "out of it, dazed, drowsy", the confession itself was quite detailed as to the burglary. The interrogating detective testified at trial that the defendant did not appear sick, nor did he "waver in this speech." Further, the prison medical superintendent testified that he had administered the medication to Meyer before the time of the confession, and Meyer confirmed this during the interview.

██ A trial court has discretion to determine the voluntariness of a confession in light of conflicting testimony. *See Thessen v. State*, 454 P.2d 341, 345–46 (Alaska 1969). Here, the court considered the defense motion to suppress the confession and found the defendant's contentions unsupported by the affidavits or evidence. We defer to the judge's conclusions, and thus hold that the confession was voluntarily given.

## IV

█ Finally, appellant claims that he was not given effective assistance of counsel at the 1977 trial for burglary, larceny, and forgery. Following the advice of his counsel, Meyer pled guilty to three counts. A fourth count was dismissed. In his petition for post-conviction relief, appellant argues he was not advised by counsel that if he pled guilty to the 1977 charges, his 1976 probation could be revoked and that, had he known of this result, he would have pled not guilty to the later charges.

During the post-conviction proceedings, the superior court accepted testimony from the attorney of record at the 1977 hearing as well as from Meyer. Although neither specifically recalled discussing the issue of revocation of the 1976 probation, notes in the attorney's file indicate that he had assessed the consequences of pleading guilty.

Further, as a condition of probation on the 1976 conviction, the court warned Meyer that any future violations of the law would result in revocation of his probation. During the post-conviction relief hearing, Meyer admitted that in 1977 he understood the consequences of a later conviction and stated he had hoped his probation would not be revoked. During the 1977 hearing, the District Attorney even told the judge, in the presence of the defendant, that the state would be filing a petition to revoke Meyer's suspended sentence on the basis of his probation violation. We hold that under the circumstances a reasonable person would have been on notice that pleading guilty to a second offense, while on probation, would jeopardize that probation.

Thus, we find that Meyer had effective assistance of counsel.

AFFIRMED.

---

four anteroom conferences during course of trial because, under previously followed test, no substantial rights were affected).

7.  Meyer argues that delay in providing a transcript of the court's conference with the jury inhibited preparation of his motion for a new trial as he was not fully informed of the contents of the discussion. This argument is untenable, as the trial court permitted either counsel to interview and obtain affidavits from the jurors after the conference regarding their misunderstanding. Insofar as the motion for new trial was based on juror misunderstanding, the transcript did not contain any relevant information not *obtainable* by affidavit from the jurors. Further, a transcript of the conference was available to both parties in time for Meyer's application for post-conviction relief.