**Brian GRAHAM, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 6091**

Court of Appeals of Alaska.

Dec. 17, 1982.

Thomas H. Dahl and Stephanie Patel, Strachan & Dahl, Anchorage, for appellant.

Elizabeth H. Sheley, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

**PER CURIAM.**

The judgment of the superior court is AFFIRMED.

SINGLETON and COATS, JJ., concur.

BRYNER, C.J., dissents.

SINGLETON, Judge, concurring.

Brian Graham was convicted of selling five half-ounce bags of marijuana to Frank G. Kawagley, a police informant, in violation of AS 17.12.010. The evidence introduced at trial established that Kawagley was given $240 in marked money by the Bethel police to purchase the marijuana. He left and returned shortly thereafter with the marijuana in question. The police obtained a search warrant to search Graham's residence based upon Kawagley's statement that he had used the marked money to purchase the marijuana from Graham. The search of Graham's residence turned up the marked money and additional marijuana contained in five baggies, two bottles and a box.

Graham did not testify. The theory of the defense was that Kawagley had visited Graham and smoked marijuana with him, but had not purchased any marijuana. Rather, the defense hypothesized that Graham received the $240 from Kawagley in payment of an antecedent debt. Thereafter, the defense reasoned, Kawagley, fearing retaliation from the police because he had neither the marked money nor the marijuana, had gone to the residence of John McIntyre, a person from whom Kawagley had purchased marijuana in the past, and sought to "borrow marijuana." Kawagley denied going to McIntyre's residence the evening of October 7, 1981, the date the drug transaction between Kawagley and Graham allegedly occurred. Graham called McIntyre as a witness during the defense case-in-chief. In a bench conference with the court and the prosecutor, Graham indicated that he intended to impeach Kawagley by offering McIntyre's testimony that Kawagley had in fact come to McIntyre's residence the evening of October 7 and

sought to borrow marijuana. Graham disclosed that if pressed beyond this point, McIntyre would claim fifth amendment protection. The trial court did not hold a hearing to determine whether McIntyre had a bona fide claim of self-incrimination. Over vigorous objection from the state the trial court permitted Graham to call McIntyre for the sole purpose of impeaching Kawagley regarding a visit to McIntyre's residence the night of October 7. It appears that the court intended to allow McIntyre to claim the fifth amendment privilege if questioned further. McIntyre testified that Kawagley had come to McIntyre's residence that night and had requested to borrow marijuana. On cross-examination the prosecutor asked McIntyre whether he in fact furnished marijuana to Kawagley. McIntyre remained silent. The trial court intervened, a bench conference was held, and the question was not answered. During final argument defense counsel strongly implied that McIntyre, not Graham, had been the source of the marijuana Kawagley turned over to the police in an apparent exchange for the $240 in marked money. In response to this argument, the district attorney made the following comment during his rebuttal argument, "Mr. Angstman [defense counsel] says this pot could have come from any number of places. Did it come from Mr. McIntyre? I asked Mr. McIntyre." Graham objected and the court instructed the jury to disregard the district attorney's last comment. The district attorney then continued, "Mr. McIntyre wasn't my witness, ladies and gentlemen."

Appellant moved for a mistrial. He argued that the state had left the jury with the impression that had McIntyre in fact furnished the marijuana, defense counsel would have asked him and he would have admitted it. The jury could have inferred that McIntyre had not furnished it. Such an argument, Graham contended, was in violation of the trial court's order permitting McIntyre to testify and rely upon the fifth amendment if specifically asked about furnishing marijuana to Kawagley. Conse-

quently, the defense continued, its failure to ask McIntyre whether he furnished the marijuana to Kawagley might result in the jury's inferring that McIntyre had not done so, when in reality the defense was precluded from asking the question by the expectation that McIntyre would invoke his fifth amendment rights. The trial court denied the motion for mistrial, reasoning that the curative instruction removed any prejudice.

In seeking a proper resolution to this case the court has found itself in substantial disagreement. All members of the court agree that the decision whether or not to grant a mistrial is committed to the sound discretion of the trial court and that its decision will only be overturned where clearly erroneous. *Roth v. State,* 626 P.2d 583, 585 (Alaska App.1981). We are also in general agreement with the rule that "where the trial judge withdraws improper testimony from the jury's consideration, such an instruction is presumed to cure any error which may have been committed by its introduction." *Id.* at 585 (quoting *Anderson v. State,* 438 P.2d 228, 233 n. 15 (Alaska 1968)). I do not understand any member of this court to wish to apply a different rule to prosecutor's comments than to "tainted evidence."

Our difficulty with this case is in determining whether it falls within the exceptional category of cases where an error cannot be resolved by a curative instruction; and if not within that category, we must determine the proper allocation of the burden to propose curative instructions. On balance, I think that all members of the court agree that the trial court could have cured any error in the prosecutor's final argument by specifically instructing the jury that McIntyre claimed his fifth amendment privilege regarding furnishing marijuana to Kawagley, that because of that claim neither party could question McIntyre about furnishing Kawagley marijuana, and that the jury should not draw any inferences favorable to either side from McIntyre's invocation of his fifth amendment rights. Since the prosecutor was using McIntyre's silence as evidence that he did not furnish

marijuana to Kawagley, such an instruction would have destroyed that inference. Graham thus stands in the shoes of the prosecutor in *Williams v. State,* 629 P.2d 54, 59–60 (Alaska 1981).

In *Williams* the defense counsel made an arguably improper reference to a hung jury at a prior trial, and the prosecutor then retaliated by indicating the jury vote favoring conviction which resulted in the mistrial. The trial court instructed the jury to disregard the prosecutor's remark, but denied the defendant's motion for a mistrial. The supreme court reversed, and in so doing concluded that retaliation might be permitted to the limited extent necessary to neutralize an improper defense argument but could not be used as a license to affirmatively attack the defendant. To avoid problems from future retaliation, the court implied that the aggrieved party should make an objection to allow the court to rule and possibly cure the error before the aggrieved party engaged in any self-help. *Id.* at 59–60. Graham followed the procedure suggested in *Williams* by bringing his objections to the prosecution's argument to the court's attention before replying. It is undisputed, however, that Graham did not request a stronger curative instruction. Consequently, the views of the members of this court diverge.

Judge Coats concludes that the curative instruction given was sufficient standing alone to cure any prejudice. In my view the curative instruction given was sufficient in the absence of a request for a stronger instruction, but had the defense requested a stronger instruction along the lines outlined here the trial court might have been obligated to give it. The failure to give the instruction might have amounted to prejudicial error. Judge Bryner agrees that the stronger instruction would have cured the error. However, he concludes that Graham's motion for mistrial adequately preserved the error and that in the midst of trial it is unreasonable to expect a party injured by an error to propose a carefully drafted instruction to cure it. Judge Bryner notes correctly that there is

nothing in the record that would support an inference that the trial court would necessarily have given the stronger instruction had it been requested. I agree that there is no evidence either way on this point. Judge Bryner also reasons that the prosecutor compounded the error presented by his initial sally when he responded to the trial court's direction that the jury disregard his comments by adding the comment, "Mr. McIntyre wasn't my witness, ladies and gentlemen."

Subject to two qualifications which I discuss hereafter, it seems that defense counsel should have been entitled to reasonably rely on the trial court's orders regarding McIntyre's testimony without being subjected to the kind of rebuttal argument used by the prosecutor. To reach this conclusion, we must assume first, that the trial court correctly ruled that McIntyre should be permitted to testify subject to only limited cross-examination, without holding an *in camera* hearing to determine the extent to which McIntyre wished to invoke the fifth amendment and the validity of the invocation. This is a troublesome assumption. Graham clearly wished to leave the jury with the inference that McIntyre, rather than he, provided Kawagley the marijuana, but McIntyre would not be available for cross-examination on this point. To permit him to invoke the fifth amendment in the presence of the jury would leave the jury with the assumption that McIntyre had admitted being the source and such an assumed admission would probably survive an admonition to the contrary. As a result the state would be in the position of having Graham submit a hearsay confession by a third party to exonerate himself, a procedure specifically precluded by the Alaska Rules of Evidence unless the third party confession or admission is corroborated by other evidence. Here corroboration of McIntyre's identity as Kawagley's source was never presented. There is no direct evidence that McIntyre supplied Kawagley with the marijuana. *See* Alaska R.Evid. 804(b)(3).

The second necessary assumption is that the trial court properly ruled that the state

could not be compelled to grant McIntyre immunity in order to preserve Graham's and the state's right to full cross-examination. Neither party has briefed the law regarding these two assumptions and we must therefore assume that the trial court's rulings were proper. If we assume that the trial court's rulings were proper, I consider this an extremely close case; but it seems to me that a party complaining of error should be obligated to offer instructions calculated to cure the error, if it is feasible to do so, and that a motion for mistrial should only be granted where errors are truly incurable. *See Williams v. State,* 629 P.2d at 59. I understand the phrase "manifest necessity" to mean a situation characterized by incurable error. Since a mistrial in a criminal case is so rarely justifiable, I would conclude that a motion for mistrial never preserves curable errors. Since we all agree that any error here was curable, I concur in the decision to affirm Graham's conviction.

In any event, I am satisfied that any error was harmless. The most Graham lost by the prosecutor's statements was the inference that McIntyre rather than Graham supplied Kawagley the marijuana in question. The evidence was that Graham was the source. There was no direct evidence that McIntyre supplied it, and the circumstantial evidence suggesting that McIntyre was Kawagley's source was very weak. Under these circumstances, I would find any error harmless. *Love v. State,* 457 P.2d 622, 629–32 (Alaska 1969).

■ Graham argues that jurors affidavits should be considered in determining whether he was prejudiced by the prosecutor's inappropriate remarks. Generally, the law precludes inquiries of jurors as to how evidence and argument affected them, though a limited inquiry is permitted to determine whether extraneous prejudicial information reached a jury. *See, e.g.,* Alaska R.Evid. 606(b). Here the prosecutor's comments, while inappropriate, were not extraneous. The trial court properly refused to consider the juror affidvits. *See, e.g.,*

*Meyer v. State,* 627 P.2d 636, 638 (Alaska 1981).

█ Finally, Graham challenges a suspended imposition of sentence with ninety days to serve as excessive. We have evaluated the sentence in light of the standards set out in *Waters v. State,* 483 P.2d 199 (Alaska 1971). We have carefully considered the record and have concluded that the trial court did not commit clear error in imposing the sentence it did. *See McClain v. State,* 519 P.2d 811 (Alaska 1974).

COATS, Judge, concurring.

The following comments, which took place during the prosecution's rebuttal argument, form the basis for Graham's contention that the remarks of the prosecutor were so prejudicial that the court was required to grant either Graham's motion for a mistrial or his motion for a new trial:

> MR. HUTCHINGS: Mr. Angstman says this pot could have come from any number of places. Did it come from Mr. McIntyre? I asked Mr. McIntyre.
>
> MR. ANGSTMAN: Objection, Your Honor.
>
> MR. HUTCHINGS: Ladies and gentlemen...
>
> MR. ANGSTMAN: Objection, Your Honor.
>
> THE COURT: The jury will disregard the district attorney's last comment.
>
> MR. HUTCHINGS: Mr. McIntyre wasn't my witness, ladies and gentlemen.

█ The trial judge concluded that although the argument of the prosecutor was improper and prejudicial, in the context of the trial the prejudicial impact of the prosecutor's statement was cured by the court's admonition to the jury to disregard the statement. I have reviewed the record in this case and fully agree with the trial judge that the prosecutor's argument was improper. However, because the argument was so quickly ended by the objection and followed by the trial court's admonition, I believe it was reasonable for the trial judge to conclude that the prosecutor's comments did not have any significant impact on the jury's verdict. The trial judge was certain-

ly in the best position to gauge any impact on the jury. Therefore, I conclude that the trial judge did not abuse his discretion in refusing to grant the mistrial motion or the new trial motion. Alaska Rule of Criminal Procedure 33; *see Tugatuk v. State,* 626 P.2d 95, 101 (Alaska 1981); *Roth v. State,* 626 P.2d 583, 585 (Alaska App.1981).

Graham contends that the trial court erred in failing to consider the affidavit of a juror which Graham offered as part of his motion for a new trial. In considering Graham's motion, the trial court ruled that the juror affidavit, offered to verify the prejudicial impact of the prosecution's comments, was not competent evidence. Graham challenges that ruling.

Alaska Rule of Evidence 606(b) states, in pertinent part:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not be questioned as to any matter or statement occurring during the course of the jury's deliberations or to the effect of any matter or statement upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

The commentary to this rule spells out the policies served by the rule, but notes that there are instances where inquiry into the jury's deliberative process should be permitted:

> Alaska law generally provides that a juror cannot impeach a verdict by testimony or affidavit, but it recognizes exceptions.
>
> > Exceptions to the general rule have been made and it has been held that the type of misconduct which may impeach a verdict is fraud, bribery, forcible coercion or any other obstruction of justice. Whether the verdict should be set aside and a new trial ordered rests in the sound discretion of

the trial judge, but generally the verdict should stand unless the evidence clearly establishes a serious violation of the juror's duty and deprives a party of a fair trial.

Alaska R.Evid. 606(b), Commentary at 163; *see Meyer v. State,* 627 P.2d 636, 638 (Alaska 1981); *LaLonde v. State,* 614 P.2d 808, 811 (Alaska 1980); *Des Jardins v. State,* 551 P.2d 181, 190 (Alaska 1976).

■ Review of the cases and the rule makes it clear that the instant case was not one of the extreme situations where a juror could properly impeach a verdict. I therefore find the trial judge was correct in refusing to consider the juror's affidavit.

Graham next argues that the interests of justice demand a new trial so that McIntyre may be forced to testify. Alaska R.Crim.P. 33. More specifically, Graham argues that the trial court erred in failing to require McIntyre to respond to the prosecution's question whether McIntyre gave Kawagley marijuana. At trial when the prosecution asked McIntyre whether he gave any marijuana to Kawagley, the trial court intervened *sua sponte,* forcing the prosecution to drop the question. No objection to the trial court's intervention appears on the record. Graham made no request until after the trial was over to have McIntyre answer the question of whether he provided Kawagley with marijuana. On this record, Graham's request to have McIntyre testify fully is presented only in a new trial context, and the cases which govern a motion for a new trial based on newly discovered evidence would seem to be analogous. Those cases require, among other things, that the defendant show that the evidence is newly discovered, i.e., discovered after trial. The motion for a new trial must also allege facts which show that the moving party acted with due diligence to obtain the evidence before trial. *Dorman v. State,* 622 P.2d 448, 456 (Alaska 1981). Here Graham was aware of McIntyre's possible testimony before trial. He could have made a motion to compel McIntyre's testimony before the first trial or at least after the prosecutor's cross-examination of McIntyre. Therefore,

applying the standards for a new trial based on newly discovered evidence to the instant case, I conclude that it was not an abuse of discretion for the trial judge to fail to grant a new trial so that McIntyre could be compelled to testify. I do not reach the issue of whether and under what circumstances McIntyre could be forced to testify had the request been made either before the trial or during the trial.

■ Graham argues that the trial judge erred in imposing a three-year suspended imposition of sentence with conditions that Graham serve 90 days imprisonment, pay a $1,500 fine and provide 150 hours of community service. Graham contends the trial court in sentencing failed to recognize a distinction between a sale of a small quantity of marijuana to a friend and other types of sale of marijuana. The trial court did not appear to have misperceived the facts of the sale or to have weighed them incorrectly. The trial court noted that Graham had sold a small quantity of marijuana. The record does not reflect that the trial court considered Graham to be a major dealer. The court seems to have properly considered the *Chaney* criteria. *State v. Chaney,* 477 P.2d 441 (Alaska 1970). I do not find that the sentence imposed was clearly mistaken.

BRYNER, Chief Judge, dissenting.

Brian Graham was charged with sale of marijuana to Frank Kawagley, a Bethel police informant, on October 7, 1981. At trial, Kawagley testified that on the night of October 7 he had been furnished by police with marked money, that he had traveled directly to Graham's residence and purchased marijuana from him, and that he had returned directly to the police with the purchased marijuana. Kawagley denied visiting with anybody else on the night of the sale, and he expressly stated that he had not contacted John McIntyre. In an effort to discredit Kawagley, the defense called McIntyre, who testified that Kawagley had, in fact, come to his house on the night of October 7 and asked to borrow some marijuana. McIntyre refused to answer the prosecution's question on cross-ex-

amination as to whether he actually gave Kawagley marijuana. It is undisputed in the record that McIntyre's refusal to answer this question was based on the invocation of his constitutional right against self-incrimination. The jury, however, was not expressly informed of McIntyre's reason for declining to answer the prosecution's question.

Thereafter, in the course of the rebuttal portion of his final argument, the prosecutor stated: "[Defense counsel] says this pot could have come from any number of places. Did it come from Mr. McIntyre? I asked Mr. McIntyre." This remark amounted to a comment on McIntyre's silence that was made in a manner unmistakably calculated to mislead the jury. It insinuated that McIntyre would have testified he had not given Kawagley any marijuana if the state had not been prevented from eliciting this testimony.

Graham promptly and appropriately objected, and the trial court correctly sustained the objection, ordering the jury to disregard the prosecutor's statement. Immediately on the heels of this ruling, however, the prosecutor added: "Mr. McIntyre wasn't my witness, ladies and gentlemen." This second remark exacerbated the impropriety of the preceding comment by suggesting to the jury that it was Graham who was somehow responsible for McIntyre's refusal to say whether he had provided Kawagley with marijuana.

After conclusion of the prosecution's rebuttal, Graham promptly sought to have the court declare a mistrial based on the prosecutor's comments concerning McIntyre's silence. The trial judge denied this motion, indicating his belief that the earlier cautionary instruction that he had given was sufficient.

In my view, the remarks of the prosecutor challenged in this case were flagrantly improper and highly likely to mislead the jury. I cannot agree that the cautionary instruction initially given by the trial judge was sufficient to cure the potential for prejudice created by the improper remarks. The jury was told only to disregard the

district attorney's comment that he had asked McIntyre if McIntyre gave Kawagley marijuana. While jurors might easily have disregarded the remark itself, it would have been far more difficult for them to disregard the inference obviously intended by this remark. Nor was the jury expressly told to disregard this inference. Moreover, the timing of the trial court's ruling left the jury free to consider the prosecutor's second remark—that McIntyre was a witness presented by the defense. Consequently, I would find that the trial court's cautionary instruction was inadequate under the circumstances. Given the nature of the prosecutor's improper argument, I think that Graham would adequately have been protected from the possibility of prejudice only if the jury had been expressly informed that McIntyre's refusal to answer was based on the invocation of his right against self-incrimination.

While I agree that the need for a mistrial would clearly have been obviated by instructing the jury as to the reason for McIntyre's refusal to answer the prosecution's question, and while I further agree that this case presents a close question, on balance I cannot conclude that Graham's failure to request such an instruction as an alternative to his motion for mistrial constituted a waiver. In moving for a mistrial, Graham apprised the court, in clear, concise and unequivocal terms, of the nature of the state's error and of his contention that the trial court's initial cautionary instruction was insufficient to cure that error. This is all that is required to preserve the issue for appeal. *See* Alaska R.Evid. 103(a)(1). I believe that Graham's motion for mistrial necessarily implied that, if some intermediate form of relief was appropriate, it should have been resorted to; the mistrial motion effectively conveyed Graham's belief that something more was necessary than the initial cautionary instruction given by the court. There is no danger in this case that the court could have been misled by the nature of Graham's motion to believe that Graham was, in effect, demanding all or nothing—that a mistrial be granted or that

nothing further be done to correct the state's error. Nor is there anything equivocal about the trial court's ruling that its initial cautionary instruction was sufficient to cure any error created by the prosecution's improper argument. It is this ruling that Graham appeals, and it is this ruling that I believe to be incorrect.

Under these circumstances, I believe that reliance on a theory of waiver to deny relief to Graham seems singularly inappropriate. Not only does such a ruling impose an unnecessary and unrealistic burden of formalism on the defense, but it also permits the state to profit by a conviction won through deliberate or reckless misconduct affecting the heart of the jury's truthfinding function. I therefore dissent.