Kevin P. **HILBURN**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. A–2155.

Court of Appeals of Alaska.

Dec. 9, 1988.

---

Christine Schleuss, Anchorage, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

In early January of 1985, E.L. and A.T. travelled to Anchorage from Hooper Bay. E.L. was a twenty-three-year-old Yupik Eskimo woman who was born and raised in Hooper Bay. Her primary language was Yupik, but she had learned English in school. She had been to Anchorage only once prior to 1985. E.L. and A.T. lived together in Hooper Bay. They are the parents of a child, who at the time of this case was two years old. A.T. went to high school in Anchorage.

At about 2:00 a.m. on January 6, 1985, E.L. and A.T. were walking along Fireweed Lane near Arctic. E.L. was cold, particularly her feet. She was crying. A van, driven by a man who said his name was Kevin, stopped for them. This man was later identified as Kevin P. Hilburn. A.T. asked Hilburn for a ride to his father's house. E.L. and A.T. got into the van. Hilburn then drove a short distance and stopped. Hilburn reached under the driver's seat, pulled out a pistol, pointed it at A.T. and said, "Try to pull a scam on me, I want you to get out of the car." A.T. got out of the van and the van drove away with E.L. still in it. A.T. then called the police.

According to E.L.'s testimony, when Hilburn pointed the gun at A.T. and told him to get out of the car, she did not get out of the van because she was afraid of the gun. She testified that Hilburn was pointing the gun at her. After A.T. got out, Hilburn

drove off. According to E.L., while she was driving with Hilburn, Hilburn told her to take her clothes off. She removed her clothing, and Hilburn then told her to perform fellatio on him. E.L. testified that she did not want to perform this act, but did so because she was afraid of the gun. Hilburn later stopped the van. E.L. testified that Hilburn had vaginal and anal intercourse with her. She also testified that he put the barrel of the pistol in her vagina. E.L. testified that she then put her clothes back on, and that Hilburn drove her back toward Anchorage. According to E.L., they stopped one more time and, in E.L.'s words, "he made love again." Hilburn then drove E.L. back to Anchorage, dropping her off near a park.

Hilburn gave a taped statement to Investigator Weeks of the Anchorage Police Department sometime after the incident, but prior to January 22, 1985. In this statement, Hilburn admitted picking up a young woman and her boyfriend. According to Hilburn, the boyfriend offered E.L. to Hilburn for sexual favors in return for a bottle of whiskey. Hilburn admitted forcing A.T. out of the vehicle at gunpoint. He stated that he did this because he was disgusted with A.T. for offering his girlfriend. According to Hilburn, after he forced A.T. out of the van, the young woman told Hilburn she was cold and wanted to go home with him. E.L. told him that she wanted to make love to him. Hilburn stated that he then drove to Eagle River, and parked near the side of the road. Hilburn said that he had vaginal intercourse with the young woman and that she also performed fellatio on him. Hilburn claimed that both acts were consensual. Hilburn stated that he then drove E.L. back to Anchorage, attempted to find E.L.'s aunt's house, and finally dropped her off at the park near the Sheraton Hotel.

Hilburn was arrested on January 22, 1985. He was indicted by the Grand Jury for assault in the third degree, AS 11.41.-220(a)(1), kidnapping, AS 11.41.300(a)(1)(C), and four counts of sexual assault in the first degree, AS 11.41.410(a)(1) (alleging vaginal intercourse, anal intercourse, fellatio, and penetration of the vagina with the muzzle of a handgun). Following a jury trial, Hilburn was convicted of assault in the third degree, AS 11.41.220(a)(1), and two counts of sexual assault in the first degree, AS 11.41.410(a)(1) (vaginal intercourse and fellatio).

Sexual assault in first degree is an unclassified felony with a maximum term of imprisonment of thirty years. Hilburn, as a first felony offender who possessed a firearm during the offense, was subject to a presumptive term of ten years. *See* AS 12.55.125(i)(2). Trial Judge James A. Hanson referred this case to the three-judge panel, stating that it was a close question whether a presumptive sentence of ten years would be manifestly unjust. The three-judge panel concluded that although Hilburn had "very good prospects for rehabilitaion," considering all the circumstances of the case, imposition of a ten-year presumptive sentence was not manifestly unjust.

The three-judge panel referred the case back to Judge Hanson for imposition of the presumptive term. Judge Hanson sentenced Hilburn to two concurrent ten-year presumptive terms on the sexual assault in the first degree convictions. He also sentenced Hilburn to two years, suspended, for the assault in the third degree conviction. This suspended sentence was made consecutive to the ten-year presumptive terms. Judge Hanson placed Hilburn on probation for four years following his release from incarceration. Hilburn appeals his conviction and sentence. We affirm.

Hilburn first argues that Judge Hanson erred in allowing the state to present certain testimony of the physician who examined E.L. shortly after the alleged sexual assault. Dr. John Midthun stated that he had been a doctor with the Indian Health Service for seven years, and that he had dealt almost exclusively with native people. He said that he had worked in the Pribilof Islands, in Kotzebue, and most recently in Anchorage. He testified that he had extensive experience treating Yupik patients from villages. He testified that on many occasions he had done medical reports for suspected rape victims who were natives,

but that he did not know the exact number of times. He stated, over objection, that Eskimo women reacted to trauma differently than other patients he had observed. He testified that a Yupik Eskimo woman from a village who had experienced trauma would tend to be less emotional, more stoic, and less prone to hysterical reactions. He testified that when he examined E.L., she appeared to be quiet and subdued, exhausted, and emotionally drained. He testified that her behavior was consistent with that of a Yupik Eskimo woman from a village who had undergone a traumatic experience of some sort.

Hilburn first argues that the state violated Alaska Criminal Rule 16(b)(1)(iv) because the state did not inform the defense of its intent to rely on Dr. Midthun's testimony. However, as the state notes, Hilburn never raised this objection at trial. Had Hilburn's counsel requested a continuance, the trial court might have granted Hilburn time to prepare for cross-examination or to locate a rebuttal witness. We conclude that Hilburn forfeited this objection by failing to raise it at trial. *See Dyer v. State*, 666 P.2d 438, 452 (Alaska App. 1983) (where the defendant did not object to the testimony of an expert witness on the ground that there had been a discovery violation, the defendant had not preserved the issue of the discovery violation for appeal).

Hilburn next argues that the state violated a procedural rule by not first offering Dr. Midthun's testimony to the court out of the presence of the jury. Hilburn argues that this was required by both Alaska Evidence Rule 404(a)(2)(i) and *Anderson v. State*, 749 P.2d 369, 373–74 (Alaska App. 1988). Hilburn also argues that Dr. Midthun's testimony was an improper subject for expert testimony under *Rodriquez v. State*, 741 P.2d 1200 (Alaska App.1987).

In understanding this issue, it is important to recognize that the trial in this case took place before this court's decisions in *Rodriquez* and *Anderson*. On appeal, Hilburn has framed the discussion of these issues in light of *Rodriquez* and *Anderson*. However, in the trial court his focus ap-

peared to be strictly on Dr. Midthun's personal qualifications to testify as an expert on how Eskimo women from villages react to trauma. In *Rodriquez*, we attempted to deal with the issue of expert testimony which concerned the behavioral characteristics of victims. We stated that "[t]estimony by an expert witness that purports to establish by scientific principles that another witness is telling the truth treads on dangerous legal ground. On the other hand, testimony by an expert witness which provides useful background information to aid the jury in evaluating the testimony of another witness is admissible." *Rodriquez*, 741 P.2d at 1204. In *Anderson*, a case concerning children who had allegedly been sexually abused, we explained *Rodriquez* as follows:

> In *Rodriquez*, we recognized that several kinds of expert testimony regarding the behavior of sexually abused children have been offered for a variety of purposes. It is therefore difficult, and perhaps improper, to formulate a single rule to cover all such cases. However, we did isolate one kind of case in which we concluded that such expert testimony is appropriate. When a complaining witness testifies that he or she has been the subject of sexual or physical abuse and the defense seeks to discredit this testimony by showing that the witness' conduct (*i.e.*, remaining with the allegedly abusive partner or parent or expressing love or affection for that allegedly abusing person) was inconsistent with the claimed abuse and therefore that the claim of abuse was false, the state should be permitted to offer expert testimony that other members of the relevant class, (*i.e.*, abused or battered women or sexually abused children) characteristically exhibit such conduct even though they are, in fact, abused.

*Anderson*, 749 P.2d at 373. In *Haakanson v. State*, 760 P.2d 1030, 1036 (Alaska App., 1988), we stated:

> *Rodriquez* and *Anderson*, read together, permit expert testimony that responds to a defense claim that a complaining witness' conduct is inconsistent with being

sexually abused by showing that similar conduct is exhibited by those who are sexually abused. These decisions do not permit testimony offered to prove that the complaining witness is sexually abused by showing that the complaining witness exhibits behavior similar to that exhibited by sexually abused children.

■ On appeal, Hilburn argues that Dr. Midthun's testimony was the kind of suspect expert testimony which we described in *Rodriquez* and *Anderson:* "[E]xpert testimony seeking to establish that a person is a member of a particular class or group, *i.e.*, battered women or sexually abused children, by showing that they exhibit behavioral characteristics common to that group." *Anderson*, 749 P.2d at 373. However, although Hilburn vigorously objected to Dr. Midthun's testimony at trial, it does not appear to us that he objected on this ground. Hilburn objected that Dr. Midthun was not a "cultural anthropologist," *i.e.*, that Dr. Midthun did not have sufficient expertise to testify to the behavioral characteristics of Eskimo women who had undergone trauma.

Admissibility of expert testimony is governed by Alaska Evidence Rule 702 which provides in part:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

A.R.E. 702(a). The decision of whether to allow a witness to testify as an expert is within the sound discretion of the trial court; this decision is reviewable only for an abuse of discretion. *Rodriquez*, 741 P.2d at 1203.

E.L. is a native woman from Hooper Bay, Alaska. She had been to Anchorage only once prior to the incident in 1985. The state established that Dr. Midthun had extensive contact and experience with native women who had undergone trauma. Dr. Midthun testified that E.L.'s withdrawn behavior was consistent with her having un-

dergone a traumatic experience. From this evidence, the trial court properly determined that Dr. Midthun was personally qualified to give this testimony. *Handley v. State*, 615 P.2d 627 (Alaska 1980). This testimony appears to be the kind of testimony that we indicated, in *Rodriquez* and *Anderson*, could be proper.

The defense had to attack E.L.'s credibility in defending this case. A jury certainly might conclude that E.L.'s unemotional, withdrawn behavior was inconsistent with the behavior of a person who had been raped. The jury could easily conclude that because E.L. was not hysterical, she had not been raped. Dr. Midthun's testimony can be properly characterized as tending to establish that E.L.'s behavior was not inconsistent with a person who had undergone trauma. It is important to note that Dr. Midthun did not say that E.L.'s behavior was consistent with an Eskimo woman who had been raped, that E.L. was suffering from "rape trauma syndrome," or that he believed that her testimony was truthful.

As we have pointed out earlier, the objection which Hilburn raised at trial went to Dr. Midthun's personal qualifications to testify. Therefore, the objection did not focus the trial court's attention on the question of whether the emotional reaction of village Eskimo women to trauma was a proper subject for testimony by anyone. From the record before us, it appears that Dr. Midthun was qualified, if anyone was, to testify as to this subject matter. Given Midthun's personal qualifications, we do not believe the trial court was required to do more than rule on whether Dr. Midthun appeared to be personally qualified to give an opinion in this area.

We also conclude that the prosecution cannot be faulted for failure to bring this evidence to the attention of the trial court out of the presence of the jury before presenting it. At the time of this case, nothing in Evidence Rule 404 clearly required the prosecution to make a prior application to the court before presenting this

testimony.[1] Furthermore, the testimony which Dr. Midthun gave is the kind of testimony which we have indicated could be proper. We conclude that the trial court did not err in admitting Dr. Midthun's testimony.

■ Hilburn next argues that he was denied his constitutional right to a unanimous verdict on Counts III and V. In Count III, Hilburn was charged with an act of nonconsensual vaginal intercourse with E.L. In Count V, Hilburn was charged with forcing E.L. to commit a nonconsensual act of fellatio. Hilburn points out that E.L. testified that an act of nonconsensual vaginal intercourse took place in Eagle River. E.L. also testified that during the second stop, enroute to Anchorage, Hilburn made her "make love" to him a second time. Hilburn argues that this second incident may have been an act of vaginal intercourse or may have been an act of fellatio. Therefore, Hilburn contends that it is impossible to tell whether the jury convicted him for the first act of vaginal intercourse and the first act of fellatio that E.L. reported or whether the jury convicted him based upon the other incident that E.L. described. Hilburn relies on *Covington v. State*, 703 P.2d 436, *op. on rehearing*, 711 P.2d 1183 (Alaska App.1985). Hilburn concedes that he did not object on this ground in the trial court. He therefore concedes that this issue is reviewable only as plain error. *See* Alaska R.Crim.P. 47(b).

In *Covington*, the victim testified that she was sexually abused by her father from the time she was nine or ten years old. The daughter was eighteen years old at the time of trial. The daughter testified to numerous acts of sexual intercourse which occurred over a substantial period of time. We concluded that "under these circumstances, there is substantial doubt that the jury convicting Covington of each count

had a specific incident in mind." *Id.* at 440. We accordingly reversed Covington's conviction. On rehearing, we affirmed Covington's conviction. We concluded that Covington was not prejudiced by the failure of the court to require the jury to agree that a specific incident had occurred. Covington denied that he had ever sexually abused his daughter. The jury was therefore faced with a straight credibility question—whether to believe Covington or the daughter. Under the circumstances, we declined to find plain error. *State v. Covington*, 711 P.2d 1183, 1185 (Alaska App. 1985).

Under the circumstances of Hilburn's case, we have little doubt that the jury had a specific incident in mind on each charge when it convicted Hilburn. All of the acts of intercourse took place within a few hours. It seems highly unlikely under the simple circumstances in this case that the jury did not agree on what specific acts of intercourse occurred. E.L. testified to several acts of nonconsensual sexual intercourse. Hilburn testified that he had consensual vaginal intercourse with E.L. and that E.L. performed consensual fellatio on him. The jury obviously concluded that those two acts of intercourse occurred and that they were nonconsensual. We see no reason to require the prosecution to charge as many separate criminal acts as possible for this type of incident. Hilburn may very well have failed to object for tactical reasons to the fact that the prosecution had not charged every separate sexual act that E.L. testified to as a separate charge; his objection could have resulted in the prosecution charging more counts.[2] Of course, Hilburn could have requested the court to instruct the jury that it had to unanimously agree that he had committed a specific sexual act for each charge in order to con-

1. In presenting this testimony, the prosecution by its questions clearly telegraphed its desire to admit this testimony and gave Hilburn every opportunity to object. Hilburn did object, but his only specific objection was to Dr. Midthun's qualifications to give this testimony. Hilburn did not object on the ground that the prosecution did not first offer this evidence to the court out of the presence of the jury.

2. At the time of Hilburn's trial there was a serious question whether the sentencing judge would have been required by law to impose consecutive sentences for each conviction. *See State v. Andrews*, 707 P.2d 900 (Alaska App. 1985), *aff'd*, 723 P.2d 85 (Alaska 1986).

vict him. *See Covington v. State,* 703 P.2d at 440–41. However, we do not believe that Hilburn was prejudiced by the failure of the trial court to give this instruction. We do not find plain error.

Hilburn next argues that the trial judge erred in allowing the prosecutor, over objection, to use leading questions in the direct examinations of A.T. and E.L. We have reviewed the testimony of A.T. and E.L., and we conclude that the trial judge acted within his discretion in allowing the leading questions. The trial judge certainly had discretion to allow leading questions because A.T. and E.L. were from a small Yupik-speaking Eskimo village and were obviously under considerable stress in giving testimony in this case. The trial judge sustained some of the objections to leading questions, and a review of the testimony of E.L. and A.T. shows that they testified to the critical events in their own words and not merely in response to leading questions. We find no abuse of discretion.

Hilburn next argues that the trial judge erred in allowing A.T. to state that E.L. had told him the same story that she had related to the police and to the prosecutor. Hilburn argues that this was improper opinion testimony of a lay witness. A.R. E. 701. From a review of the record, it is clear to us that the admission of this testimony had no impact on the trial. Any error in admitting this testimony was harmless.

Hilburn next raises several issues concerning his contention that the trial court erred in allowing the prosecutor to make improper arguments to the jury. During his closing argument, the prosecutor made the following comment:

It's a simple assumption by the defendant in his fantasy as to how everything went down that, you know, these people are savages and that they trade their women for liquor, but there's no indication whatsoever in the state of evidence in this case that either [A.T.] or [E.L.] are anything but virtuous people. It's an outrageous statement to make that the— that [A.T.] was willing to trade [E.L.] for

a bottle of booze. If that was his practice, if that were the norm between these two people, it would seem to me that the defense could have found some similar incident where he had done such thing, but there was not—there's no indication whatsoever.

DEFENSE COUNSEL: Objection, Your Honor. Improper allocution of the burden of proof.

THE COURT: (Indiscernible).

PROSECUTION: Then I will rephrase that particular comment. There is no evidence in this case whatsoever that either of these people are anything other than virtuous, married people, whether their marriage takes place now or sometime in the future, with a baby at home.

DEFENSE COUNSEL: Same objection, Your Honor. It's not my burden of proof.

THE COURT: The defense is not required to establish anything. I'll just tell you that per....

PROSECUTION: That is—I—the prosecution agrees entirely with both the statement by the defense and the statement by the judge and my statement is that there is no evidence whatsoever before you that these people are other than virtuous people.

DEFENSE COUNSEL: Same objection, Your Honor. I don't have to bring that evidence in here.

THE COURT: I think it's clear.

Hilburn asserts that this argument was improper both because it referred to information not in the record and because it placed a burden on the defense to present evidence of bad character of E.L. and A.T. He claims that this argument was an appeal to the jury to convict out of sympathy for the alleged victims. We note, however, that when the defense attorney objected, the court responded to the objection by clarifying that the defense did not have a burden of proof. The court attempted to provide the relief that the defense attorney requested. The defense attorney did not request additional relief or move for a mistrial. Therefore, Hilburn

did not properly preserve his claim that the court's actions were inadequate to cure any prejudice. We accordingly find no error.

■ Hilburn next argues that the trial judge erred in ruling that Hilburn's defense counsel opened the door to the prosecutor's comments on Hilburn's failure to testify.

During closing argument, Hilburn's counsel stated:

I told you he had the right not to testify and you told me you wouldn't consider that against him in any way.... You cannot consider the fact that he didn't testify. You cannot speculate about it. You cannot assign it any weight whatsoever.... That's a decision that Mr. Hilburn makes with me and there are a lot of reasons for that and you can't speculate on why. *But what could he tell you. He's already given his statement to the police.* The police officer had a chance to question him, perhaps didn't at length to your satisfaction, but he did have an opportunity to talk to him. Now, what's in that statement. *Why didn't Mr. Hilburn tell you, why did he tell the police office* [sic]. (Emphasis added.)

During the state's rebuttal argument the prosecutor stated:

And you are asked what could he have told you if he had chosen to testify. Well, he could have told you why he was packing heat all over Anchorage. What is—what if for any reason he lives—leads such a dangerous life that it's necessary for him to pack a pistol in a shoulder holster and he could have told you why it was necessary to point a gun at a man that was not armed and was not offering him any violence. He could have told you why it was that he was performing all those sex acts on a lady that he didn't even bother to get her first name.

DEFENSE COUNSEL: I'd request an instruction, Your Honor, concerning burden of proof.

THE COURT: In this case, counsel, you opened the door and the objection is denied.

PROSECUTION: He could have told you why they didn't go to a warm house where they could be safe instead of a deserted country road someplace, and he could have told you why if for any reason his charms were such that the lady immediately wanted to make love with him even though she had just seen her husband assaulted with a gun....

Hilburn argues that this exchange was an improper comment on his failure to testify. Hilburn argues that this comment on his failure to testify violated his rights under both the fifth amendment to the United States Constitution, and article I § 9 of the Alaska Constitution. In support of this argument, he cites *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 *reh'g denied*, 381 U.S. 957, 85 S.Ct. 1797, 14 L.Ed.2d 730 (1965), *Gunnerud v. State*, 611 P.2d 69 (Alaska 1980), and *Dunn v. State*, 653 P.2d 1071 (Alaska App.1982). However, in *United States v. Robinson*, —— U.S. ——, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988), the Supreme Court summarized federal constitutional law in this area stating:

Where the prosecutor on his own initiative asks the jury to draw an adverse inference from a defendant's silence, *Griffin* holds that the privilege against compulsory self-incrimination is violated. But where as in this case the prosecutor's reference to the defendant's opportunity to testify is a fair response to a claim made by defendant or his counsel, we think there is no violation of the privilege.

*Id.* 108 S.Ct. at 869.

Hilburn urges us not to follow the majority opinion in *Robinson*, citing *Williams v. State*, 629 P.2d 54 (Alaska 1981). In *Williams*, the supreme court disapproved of the rule which says that if the defense makes an improper argument, then prosecution can respond with a similar improper argument. The supreme court stated: "We are reluctant to approve any rule which encourages unprofessional conduct by prosecutors as retaliation." *Id.* at 59 (footnote omitted). Hilburn's case, however, is not similar to the *Williams* case.

Hilburn's counsel made an entirely proper argument. He pointed out that his client had made a statement to the police. He essentially argued to the jury that, had his client taken the witness stand, his client could not have told the jury anything more. The prosecutor had no ground to object to this argument. Rather, he either had to ignore the argument, or had to attempt to rebut the inferences that Hilburn could not have given a more complete statement had he testified and that he had completely answered the charges in the statement he had made to the police.

Under these circumstances, we conclude that the trial judge did not err in allowing the prosecutor to rebut this inference. The argument pointed out inconsistencies and weaknesses in Hilburn's defense in direct response to Hilburn's argument that the statement he gave to the police was a complete and satisfactory explanation. The trial judge specifically instructed the jury in the jury instructions which he gave at the end of the case that the defendant had a constitutional right not to testify and that the jury was not to draw any inference of guilt from the fact that he did not testify. We conclude that the trial judge did not err in allowing the prosecution to respond in this manner to Hilburn's argument concerning his statement to the police.

■■■■ Hilburn next argues that the prosecutor's closing words in his rebuttal argument constituted plain error. The prosecutor stated:

> Don't condemn yourself to live in a community or in a state where even our humblest citizen can be treated so savagely with impunity and with such disrespect for their rights as human beings, and I thank you for your courteous attention.

To establish plain error, Hilburn must show that the error was "(1) so obvious that it must have been apparent to a competent judge and a competent lawyer even without objection and (2) so substantially prejudicial that failing to correct it on appeal would perpetuate a miscarriage of justice." *Potts v. State,* 712 P.2d 385, 390

(Alaska App.1985). We conclude that this argument does not rise to the level of plain error.

■■■■ Hilburn's final contention is that the three-judge panel erred in refusing to find that imposition of the ten-year presumptive sentence would be manifestly unjust. Hilburn was twenty-six at the time of this offense and he had no prior criminal record. Hilburn, as a first felony offender convicted of sexual assault in the first degree, was subject to a presumptive sentence of ten years because he possessed a firearm during the commission of the offense. *See* AS 12.55.125(i)(2). In referring the case to the three-judge panel under AS 12.55.165, Judge Hanson concluded that it was a close question whether imposition of a ten-year sentence would be manifestly unjust. It was clearly proper for Judge Hanson to refer a close case to the three-judge panel. *See Lloyd v. State,* 672 P.2d 152, 155 (Alaska App.1983). In reaching its decision that imposition of the ten-year presumptive sentence would not be manifestly unjust, the three-judge panel emphasized the brutal nature of Hilburn's crime. The panel noted a lack of remorse that Hilburn had expressed throughout the case. The panel conceded that Hilburn's prospects for rehabilitation were otherwise very good, but concluded that the nature of the crime itself supported imposition of the presumptive term.

Under the revised criminal code, when the legislature sets a presumptive term as punishment for a crime, that punishment is to apply in a significant number of cases. Only in unusual cases are the courts to deviate from imposition of the presumptive term. *Juneby v. State,* 641 P.2d 823, 833 (Alaska App.1982), *op. on rehearing,* 665 P.2d 30 (Alaska App.1983), *modified, Woods v. State,* 667 P.2d 184 (Alaska App. 1983). Although Hilburn's lack of a previous criminal record and his good prospects for rehabilitation are noteworthy, given the nature of the crimes that he committed it is difficult for him to establish that his case is one of the unusual ones where presumptive

 

sentencing should not apply. We accordingly conclude that the three-judge panel was not clearly mistaken in finding that imposition of the presumptive term did not constitute manifest injustice.

Hilburn's conviction and sentence are AFFIRMED.