NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | | |
|---|---|---|
| WILBURN D. JACKSON, | ) | |
| | ) | Court of Appeals No. A-10835 |
| Appellant, | ) | Trial Court No. 1SI-09-84 CR |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| STATE OF ALASKA, | ) | |
| | ) | |
| Appellee. | ) | No. 2439 — December 26, 2014 |
| | ) | |

Appeal from the Superior Court, First Judicial District, Sitka, Patricia A. Collins, Judge.

Appearances: Kelly R. Taylor, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Tamara E. de Lucia, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Hanley, District Court Judge.[*]

Judge ALLARD.

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

Wilburn Dean Jackson was convicted of first-degree sexual assault and fourth-degree assault for physically assaulting L.D., his girlfriend, and forcing her to have sexual intercourse. Jackson appeals his sexual assault conviction, arguing that the superior court erred in failing to give the jury a proper unanimity instruction on that charge.

Because we conclude that the failure to properly instruct the jury on the need for unanimity constituted plain error in this case, we reverse Jackson's sexual assault conviction and remand for a new trial.

*Factual and procedural background*

Jackson and L.D. lived together and were in a sexual relationship for six years. On March 2, 2009, they went to a local bar and had several drinks. L.D. became too intoxicated to drive and took a cab back to the trailer she shared with Jackson. Jackson returned to the trailer sometime later that night. Although L.D. could not remember the specific details of Jackson's arrival, she recalled that he pulled her by the hair and dragged her to the trailer door. (This conduct formed the basis of the fourth-degree assault conviction that Jackson is not challenging on appeal.)

The next morning, L.D. woke to find Jackson lying next to her. Jackson apologized for putting his fingers in her vagina the night before, an action L.D. did not remember happening. Later in the morning, Jackson grew upset about misplaced money and began throwing things around the trailer and breaking furniture. Eventually, however, he calmed down and lay down on a couch in the living room, and L.D. lay down on the living room floor.

L.D. testified that, at that point, Jackson yelled at L.D. to get her "ass in the air." She initially did not respond, but when Jackson repeated his command, L.D.

refused. L.D. testified that Jackson then "flew" off the couch and held her down with his body. She said that while Jackson was holding her down from behind, she could feel his penis in her vagina and then in her anus. Once the assault was over, L.D. called 911; the police arrived and took Jackson into custody.

Jackson gave a recorded interview to the police. The interview was played at trial, and the jury was also provided with a transcript. During the interview, Jackson admitted that he stuck two fingers into L.D.'s vagina the previous night and that he apologized to L.D. because she had not liked the way he did it.

Jackson also claimed in the interview that the vaginal sex with L.D. the next morning was consensual. He stated that L.D. had allowed him to lie down next to her on the living room floor and eventually also to put his penis into her vagina. Jackson stated that although L.D. may not have affirmatively wanted to have sex, he believed that she "didn't mind" and was willing to go along with it. Jackson explained that, after a few thrusts, his penis fell out of L.D.'s vagina, and when he attempted to reenter, he accidently put his penis in her anus. Because L.D. and Jackson had previously discussed that they would not have anal sex, Jackson immediately withdrew and stopped having sex with L.D.

Based on this conduct, the State charged Jackson with one count of first-degree sexual assault.[1]

At trial, Jackson's defense was consistent with his taped statement. He asserted that the vaginal penetration was consensual and that the anal penetration was accidental. He also asserted that he had not acted in reckless disregard of any lack of consent on L.D.'s part because it was reasonable for Jackson to believe L.D. had

---

[1]    AS 11.41.410(a)(1).

consented to vaginal intercourse that morning based on past experiences and the long-standing dynamics of Jackson's and L.D.'s relationship.

In support of this latter theory, the defense called a clinical psychologist to testify about Jackson's and L.D.'s relationship and the communication patterns that had developed between Jackson and L.D. The expert opined that Jackson and L.D. had spent their lives together in a perpetual state of misunderstanding. The defense also elicited testimony from L.D. that, on past occasions, she would sometimes consent to intercourse even though she did not want to have sex. In addition, when Jackson first asked her for sex that morning, she did not say no and instead told him she "would get there."

Following the close of evidence, the jury was instructed to find Jackson guilty of first-degree sexual assault if it found that (1) Jackson had knowingly engaged in sexual penetration of L.D., (2) the sexual penetration was without her consent, and (3) Jackson acted in reckless disregard of that lack of consent.[2] The jury was instructed that "sexual penetration" meant "genital intercourse, cunnilingus, fellatio, anal intercourse, or an intrusion, however slight, of an object or any part of a person's body into the genital or anal opening of another person's body."[3]

The jury was not instructed that it needed to be unanimous as to the specific act or acts of penetration. No objection was made to the lack of a jury unanimity instruction.

The jury subsequently convicted Jackson of first-degree sexual assault on a general verdict form. This appeal followed.

---

[2]  *See* Alaska Criminal Pattern Jury Instruction for AS 11.41.410(a)(1) (rev. 2002).

[3]  AS 11.81.900(b)(60)(A).

*The jury unanimity requirement under Alaska law*

The due process clause of the Alaska Constitution protects a criminal defendant's right to have the jurors unanimously agree on the specific act or acts constituting the offense.[4]

Under Alaska law, a defendant can be separately convicted and punished for each distinct type of sexual penetration that occurs during a single episode.[5] Thus, when the State charges a single count of sexual assault based on the allegation that multiple types of penetration occurred during one episode, the State must either elect the specific type of sexual penetration upon which it will rely for conviction or, if the State chooses not to elect, the jury must be instructed that to convict the defendant, all twelve jurors must be in agreement as to which specific act (or acts) of sexual penetration the defendant committed.[6]

The failure to properly instruct the jury on this unanimity requirement is error of constitutional magnitude,[7] and reversal is required unless the error is harmless beyond a reasonable doubt.[8]

Here, the indictment charged Jackson with one count of first-degree sexual assault "for sexually penetrating L.D. without her consent." But the indictment did not specify which act or acts of sexual penetration formed the basis of that charge. At

---

[4]  *Khan v. State*, 278 P.3d 893, 899 (Alaska 2012) (citing *State v. James*, 698 P.2d 1161, 1167 (Alaska 1985)).

[5]  *See Iyapana v. State*, 284 P.3d 841, 852 (Alaska App. 2012); *Yearty v. State*, 805 P.2d 987, 995 (Alaska App. 1991).

[6]  *Covington v. State*, 703 P.2d 436, 440 (Alaska App. 1985).

[7]  *Anderson v. State*, 337 P.3d 534, 537 (Alaska App. 2014).

[8]  *Khan*, 278 P.3d at 900-01.

Jackson's trial, the jury heard evidence of three distinct sexual penetrations: the digital-vaginal penetration that occurred in the night and the penile-vaginal and penile-anal penetrations that took place the following morning.

The State contends that the jury understood that the conviction had to be based on one or both of the penile penetrations that occurred that morning (rather than on the digital penetration that occurred the night before) because the prosecutor's arguments for conviction were focused exclusively on the penile penetrations. We note, however, that both the parties and the court recognized that this issue needed to be clarified for the jury in the jury instructions, but then no clarifying instruction was actually provided.

In any case, even if we were to accept the State's contention that the jury understood that the conviction had to be based on penile penetration, we would still be left with the problem that the jury was never instructed on the need for unanimity as to which act or acts of penile penetration formed the basis for its verdict. The State argues that, given the manner in which the case was argued by the prosecutor — *i.e.*, the lack of differentiation in the prosecutor's arguments regarding the vaginal and anal penile penetrations — the jury was likely unanimous as to *both* acts.

The problem with this argument is that the defense clearly did differentiate between the vaginal and anal penetrations, asserting that the vaginal penetration was consensual and that the anal penetration was accidental.

On appeal, Jackson concedes that because his attorney never requested a jury unanimity instruction from the trial court, he must now prove plain error.[9] "Plain

---

[9] *See State v. Covington*, 711 P.2d 1183, 1184 (Alaska App. 1985).

error is an error that (1) was not the result of intelligent waiver or a tactical decision not to object; (2) was obvious; (3) affected substantial rights; and (4) was prejudicial."[10]

> *Was Jackson's failure to request a jury unanimity instruction the result of intelligent waiver or a tactical decision?*

The State argues that Jackson cannot meet the first prong of the test because the defense attorney may have made the decision not to bring the jury unanimity problem to the attention of the court out of concern that raising this issue could lead to amendment of the indictment to add charges against Jackson.

We agree that this might be a legitimate concern prior to trial when the State could potentially move to reindict or to otherwise amend the indictment to separate the duplicitous count into separate charges.[11] But we do not agree that this is a legitimate concern once trial has already begun.

Alaska Criminal Rule 7(e) permits an indictment to be amended without reindictment at any time before a verdict is returned only "if no additional or different offense is charged and the substantial rights of the defendant are not prejudiced."[12] Here, amending Jackson's indictment in the middle of trial to add a second first-degree sexual assault charge would violate this rule, not only because it would add a new charge, but

---

[10] *Adams v. State*, 261 P.3d 758, 764 (Alaska 2011).

[11] *See Khan v. State*, 2013 WL 6576722, at *8-9 (Alaska App. Dec. 11, 2013) (unpublished) (Mannheimer, C.J., concurring) (noting that an attorney could have a tactical reason not to object to a duplicitous indictment during trial proceedings that occurred *before* jeopardy attached).

[12] *See Bell v. State*, 716 P.2d 1004, 1005 (Alaska App. 1986) (reversing a possibly duplicitous assault conviction for violating Criminal Rule 7(e)).

also because that new charge, if it resulted in a conviction, would require a partially consecutive sentence under Alaska law.[13]

We recognize that we have previously suggested in dicta that a defense attorney might refrain from drawing attention to the lack of a unanimity instruction even after trial has begun due to a "credible risk" that the trial court would allow the State to charge a second count of driving under the influence.[14]  After reviewing the law on this issue more thoroughly, however, we acknowledge that we did not speak carefully enough in these prior decisions.

As a general matter, a defendant's failure to timely object to a duplicitous indictment — that is, an indictment that includes multiple charges in a single count — waives any future objection to the defective nature of the indictment.[15]  This is true, in part, because prior to trial, the State has the ability to cure the defective indictment by

---

[13]  Alaska Statute 12.55.127(c)(2)(E) requires at least one-fourth of the presumptive term specified for first-degree sexual assault to be served consecutively when a defendant is sentenced for two or more crimes against a person, such as first-degree sexual assault.

[14]  *See Hicks v. State*, 2013 WL 203264, at *4 n.17 (Alaska App. Jan. 16, 2013) (unpublished) (citing *Anderson v. State*, 289 P.3d 1, 4-5 (Alaska App. 2012), *Miles v. State*, 2012 WL 3870841, at *5-6 (Alaska App. Sept. 5, 2012) (unpublished), *Hilburn v. State*, 765 P.2d 1382, 1387 (Alaska App. 1988), and *Potts v. State*, 712 P.2d 385, 388 n.1 (Alaska App. 1985)).

[15]  Wayne R. LaFave et al., 5 *Criminal Procedure* § 19.3(c) (3d ed. 2007); *see also* Alaska R. Crim. P. 12(b)(2), (e) (objections based on defects in the indictment not raised prior to trial are waived unless the court grants relief from the waiver for cause); *Leitzell v. State*, 1983 WL 807796, at *1 n.1 (Alaska App. April 20, 1983) (unpublished) (noting that any error in allowing the case to go to the jury on duplicitous theories without special verdict forms was waived by defendant's failure to object).

separating the duplicitous count into separate counts and, if necessary, seeking reindictment.[16] But this remedy is no longer available once the trial has commenced.[17]

Instead, once trial has begun, the remedy for a duplicitous count is essentially limited to (1) permitting the State to elect the act on which it will seek a conviction; or (2) instructing the jury on the need to reach unanimous agreement as to the act or acts on which it convicts the defendant.[18] Some courts have also adopted the remedy of dividing the charges into separate jury verdict forms.[19] But a mid-trial amendment of an indictment to add new counts is not permitted.

---

[16] *See* LaFave, *supra* note 15, § 19.3(c), at 286 n.188 (noting that some states allow severance of a duplicitous indictment into separate counts).

[17] *See id.*; *see also* Alaska R. Crim. P. 7(e) (permitting amendment of an indictment at any time before a verdict only if no additional or different offense is charged).

[18] 1A Charles Alan Wright & Andrew D. Liepold, *Federal Practice and Procedure: Criminal* § 145, at 94-95 (4th ed. 2008); LaFave, *supra* note 15, § 19.3(c) (duplicitous count can be cured mid-trial with a corrective jury instruction); *see also United States v. Lloyd*, 462 F.3d 510, 514 (6th Cir. 2006) (duplicitous indictment may be cured through jury instruction particularizing a distinct offense); *United States v. Hughes*, 310 F.3d 557, 561 (7th Cir. 2002) (duplicitous indictment cured by corrective jury instructions); *United States v. Karam*, 37 F.3d 1280, 1286 (8th Cir. 1994) (duplicitous indictment cured by corrective jury instruction); *United States v. Robinson*, 651 F.2d 1188, 1194 (6th Cir. 1981) (duplicitous indictment may be cured by corrective jury instruction or government election to rely on one charge within a count); *United States v. Browning*, 572 F.2d 720, 726 (10th Cir. 1978) (remanding with instructions to direct government election if the lower court finds count duplicitous); *Reno v. United States*, 317 F.2d 499, 502 (5th Cir. 1963) (duplicitous indictment may be cured by government election).

[19] *See, e.g.*, *People v. Smith*, 568 N.E.2d 482 (Ill. App. 1991) (finding unanimity requirement satisfied in prosecution charging three counts of aggravated sexual assault by oral, vaginal, and anal penetration, where jury was provided with "guilty" and "not guilty" forms for each of the specified forms of penetration).

We therefore reject the State's argument that Jackson's attorney could have made a legitimate tactical decision to waive Jackson's right to jury unanimity out of concern that raising the issue would result in a mid-trial amendment of the indictment and the addition of a second first-degree sexual assault charge.

*Was the failure to give the jury a unanimity instruction harmless beyond a reasonable doubt in this case?*

In *State v. Covington*,[20] we affirmed the defendant's sexual abuse convictions despite the absence of a proper jury unanimity instruction because we concluded that the defendant was not prejudiced by the lack of this instruction, given the nature of his defense.[21] At trial, Covington did not distinguish between any of the alleged incidents of sexual abuse, claiming instead that the victim lied about everything and that nothing sexual had ever happened.[22] We concluded that, given this all-or-nothing defense and the specific manner in which the case was litigated to the jury, the jury was left to choose between two stark choices — either the victim was telling the truth about everything or the victim was lying about everything, and that therefore a unanimity instruction would have made no difference in the jury's verdict.[23]

But, as we recently explained in *Anderson v. State*,[24] our harmlessness analysis in *Covington* was based on a plain error standard that has since been superseded

---

[20] 711 P.2d 1183 (Alaska App. 1985).

[21] *Id.* at 1185.

[22] *Id.*

[23] *See id.*

[24] 337 P.3d 534 (Alaska App. 2014).

by the Alaska Supreme Court decisions in *Adams v. State*[25] and *Khan v. State*.[26] In those cases, the Alaska Supreme Court held that even when a claim of constitutional error is raised for the first time on appeal (*i.e.*, when it is raised as a claim of plain error), the "harmless beyond a reasonable doubt" test continues to govern the question of whether the error requires reversal of the defendant's conviction.

Therefore, in resolving Jackson's case, we must apply the "harmless beyond a reasonable doubt" test set forth in *Adams* and *Khan*, rather than the "appreciably affected the verdict" test that we applied in *Covington*. That is, we must determine whether there is no reasonable possibility that the verdicts reached by Jackson's jury would have been different if the jury had been properly instructed on the need for unanimity.[27]

We conclude that this standard cannot be met in this case. Unlike in *Covington*, Jackson's defense was not an all-or-nothing defense. As we explained earlier, Jackson argued at trial that the vaginal intercourse was consensual and, in the alternative, that he reasonably believed, based on his past interactions and dysfunctional communication with L.D., that L.D. had consented to the vaginal intercourse. He acknowledged, however, that L.D. would not have agreed to anal penetration and that he was aware of that fact. But he claimed that the anal penetration was purely accidental.

Thus, depending on the individual jurors' assessment of Jackson's credibility and L.D.'s credibility, different members of the jury may have come to

---

[25]  261 P.3d 758, 773 (Alaska 2011).

[26]  278 P.3d 893, 901 (Alaska 2012).

[27]  *See id.*; *Adams*, 261 P.3d at 773.

different conclusions regarding which penile penetration constituted the sexual assault in this case.

Some jurors may have concluded that Jackson should not be convicted for the vaginal penetration (either because the jurors had a reasonable doubt as to whether this vaginal penetration occurred without L.D.'s consent or because they had a reasonable doubt as to whether Jackson acted with reckless disregard of L.D.'s lack of consent), but that Jackson should be convicted of the anal penetration (because they rejected his assertion that the anal penetration was accidental).

Conversely, some jurors may have concluded that Jackson should be convicted for the vaginal penetration (because they concluded that L.D. did not consent to this penetration and that Jackson acted recklessly with regard to L.D.'s lack of consent), but that Jackson should not be convicted of the anal penetration (because they concluded there was a reasonable possibility that this penetration was accidental, as Jackson claimed).

And, of course, some jurors may have concluded that Jackson was criminally liable for both acts of penetration — *i.e.*, that both acts of penetration were done knowingly, that they occurred without L.D.'s consent, and that Jackson acted in reckless disregard of L.D.'s lack of consent as to both of them.

Thus, because different members of the jury may have found different parts of Jackson's defense persuasive, and because the jury was never instructed on the need to be unanimous, there is a reasonable possibility that the jurors convicted Jackson without ever reaching consensus on which act (or acts) they were convicting him on. We

therefore cannot conclude that the failure to instruct the jury on unanimity was harmless beyond a reasonable doubt.[28]

*We do not reach Jackson's other claims of error*

Because we are reversing Jackson's sexual assault conviction and remanding for a new trial, we do not reach Jackson's other claims of error.

*Conclusion*

We REVERSE Jackson's conviction for first-degree sexual assault.

---

[28]  *Khan*, 278 P.3d at 901.